98 P.3d 463 (2004)
Armen YOUSOUFIAN, Petitioner,
v.
The OFFICE OF RON SIMS, King County Executive, a subdivision of King County, a municipal corporation; The King County Department of Finance, a subdivision of King County, a municipal corporation; and The King County Department of Stadium Administration, a subdivision of King County, a municipal corporation, Respondents.
No. 73763-1.
Supreme Court of Washington, En Banc.
Argued February 19, 2004.
Decided September 30, 2004.
*464 David Joseph Balint, Michael G. Brannan, Law Office of Michael G. Brannan, Seattle, Rand F. Jack, Bellingham, for Petitioner.
Mark Gibson Stockdale, Seattle, for Respondents.
Michael John Killeen, Alison Page Howard, Davis Wright Tremaine LLP, Seattle, for Amicus Curiae (Allied Daily Newspapers of Wa) for Amicus Curiae (Wa Newspapers Publishers Assn).
Timothy Dunning Ford, Olympia, for Amicus Curiae (Building Industry Assn. of Wa).
Jan Elizabeth Brucker, Seattle, for Amicus Curiae (Citizens for a Livable Northgate) for Amicus Curiae (Seattle Neighborhood Coalition).
*465 William John Crittenden, Patrick Denis Brown, Seattle, for Amicus Curiae (League of Women Voters of Seattle).
Maureen A. Hart, Olympia, for Amicus Curiae (State of Washington).
Edwin Klaich Inkley, Seattle City Attorneys Office, Seattle, for Amicus Curiae (Washington Association of Municipal Attorneys).
ALEXANDER, C.J.
We are asked to determine the proper application of a provision in the public disclosure act (PDA), RCW 42.17.340(4), which provides penalties for the failure to timely produce public records. Specifically, we must decide whether a trial court that has determined that a violation of the PDA has occurred (1) must assess a per day penalty for each requested record that was withheld in violation of the act and (2) has the authority to limit the number of days against which the penalty is assessed due to the plaintiff's failure to file suit within a "reasonable amount of time." We hold that under the PDA, penalties need not be assessed per record, and that trial courts must assess a per day penalty for each day a record is wrongfully withheld. Consequently, we affirm the decision of the Court of Appeals, except for its determination to reduce the number of days upon which the penalty was assessed, which decision is reversed.

I
On May 30, 1997, Armen Yousoufian sent a records disclosure request to King County Executive Ron Sims. The request, which was made pursuant to the PDA, requested the production of two distinct groups of records: (1) studies concerning how a "`fast food'" tax used to finance a new stadium would affect consumers, and (2) "[a]ll file materials relating to, and including, the widely quoted `Conway Study' that many politicians have referred to in connection with the economic impacts of sports stadiums and any other such studies."[1] Clerk's Papers (CP) at 36, 37. On June 4, 1997, a King County "office manager" acknowledged Yousoufians request by sending him a letter stating that the Conway Study was available for review, but that it would take approximately three weeks to determine if there were other documents that fell within his request.
In succeeding months, representatives of the county corresponded with Yousoufian regarding the production of additional documents. Although the county produced many documents during this time, Yousoufian was not satisfied with the county's response because he felt that it was incomplete and untimely.
Consequently, Yousoufian hired an attorney who wrote to the county on December 8, 1997. In his letter, the attorney reiterated Yousoufians May 30 request and additionally requested "all documents ... relevant to the questions of who ordered each study, how they were ordered and what the cost was." Ex. 193, at 2. The county responded to the attorneys letter, which led to additional correspondence between the parties. The last correspondence between the parties occurred on June 22, 1998, when the county informed Yousoufian that the King County Department of Finance "has no documents related to the financing of stadium studies." Ex. 205.
On March 30, 2000, Yousoufian filed suit against the county in King County Superior Court.[2] During the course of litigation, the county located more responsive documents, including documents held by the King County Department of Finance relating to the financing of stadium studies. These were documents it had earlier denied having.
*466 Following a trial in superior court, the trial court entered findings of fact and conclusions of law,[3] and determined that Yousoufian actually made two PDA requests for documents. The first request, it determined, was on May 30, 1997, and the second was on December 8, 1997. The trial court reasoned that in his letter of December 8, 1997, Yousoufians attorney sought records that had not been requested on May 30, 1997.
Although the trial court concluded that the county eventually produced the requested documents, it also determined that the county's delays constituted a violation of the PDA. The trial court specifically found that "the County was negligent in the way it responded to Mr. Yousoufians PDA request at every step of the way, and this negligence amounted to a lack of good faith." CP at 1026. The trial court went on to conclude, however, that the county did not act in "bad faith in the sense of intentional nondisclosure." CP at 1025.
The trial court then proceeded to determine the amount of statutory penalties that it would award pursuant to RCW 42.17.340(4), the statute which authorizes an award to "[a]ny person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record." Yousoufian indicated at that time that he was seeking penalties for each day that the 228 requested "record[s]" were wrongfully withheld. CP at 688. He calculated the penalty at $1,534,855 if the court assessed the minimum penalty of $5 per day and $30,697,100 if the court assessed the maximum penalty of $100 per day.[4]
The trial court refused to award penalties on a per record basis concluding that it would result "in a penalty totally out of proportion to the County's negligence, the harm done thereby, and any amount needed for deterrence." CP at 1035. Instead, it arranged the withheld records into 10 groups based on time of production and subject matter. The trial court then determined the award based on these groups.
In arriving at the penalty, the trial court calculated the total number of days each group of records was wrongfully withheld. It then subtracted 527 days from the time that six of the groups were withheld[5] based on the fact that Yousoufian waited an excessive amount of time (647 days) from the date of the county's last correspondence until filing suit. It determined that 120 days was "a reasonable amount of time for Mr. Yousoufian to find an attorney to represent him" following the last correspondence. CP at 1037. It then took the difference between 120 days and 647 days (527 days) to reach the number of days it subtracted from the time each of the six groups of records were wrongfully withheld. While the court did not explain its basis for determining that 120 days was a reasonable period of time for Yousoufian to hire an attorney and bring suit, it did indicate that it refused to include the full 647 days "[b]ecause inclusion of this time would encourage future plaintiffs to delay in filing suit in order to incur additional penalties." Id. In the final analysis, the trial court calculated the penalty period at 5,090 days[6] and multiplied this figure by the statutory minimum penalty of $5 per day, to arrive at an award to Yousoufian of $25,440[7] in *467 statutory penalties. In total, Yousoufian received an award of $114,416.26, which included $82,196.16 in attorney fees, $6,780.10 in costs, and $25,440 in statutory penalties.
Yousoufian appealed the trial courts decision to Division One of the Court of Appeals. Yousoufian v. Office of King County Executive, 114 Wash.App. 836, 60 P.3d 667, review granted, 150 Wash.2d 1001, 77 P.3d 651 (2003). Yousoufian asserted there that the trial court erred in holding that the county had disclosed all records responsive to his request and in determining the penalties and attorney fees. Applying de novo review, the Court of Appeals affirmed the trial courts finding that the county had completely responded to Yousoufians PDA request. Applying an abuse of discretion standard of review, the Court of Appeals affirmed the trial courts determination of reasonable attorney fees, its refusal to award penalties per record, and its subtraction of 527 days from the penalty period. The Court of Appeals did, however, determine that the trial court abused its discretion in awarding the statutory minimum penalty of $5 per day in light of the county's gross negligence. Therefore, it remanded for the trial court to award a penalty exceeding the statutory minimum.
Yousoufian petitioned this court for discretionary review of the Court of Appeals decision relating to the appropriate standard of review, the assessment of penalties per record, and the subtraction of days from the penalty period.[8] The county also sought discretionary review, claiming that the Court of Appeals erred in remanding for the imposition of a per day penalty above $5. We granted review of all issues raised by the parties.

II
Under the PDA, all state and local agencies must disclose any requested public record, unless the record falls within a specific exemption. Progressive Animal Welfare Soc'y v. Univ. of Wash., 125 Wash.2d 243, 250, 884 P.2d 592 (1994). The PDA enables citizens to retain their sovereignty over their government and to demand full access to information relating to their government's activities. RCW 42.17.010, .251. The provisions of the PDA are to be "liberally construed and its exemptions narrowly construed to promote this public policy." RCW 42.17.251.
The PDA includes a penalty provision that is intended to "discourage improper denial of access to public records and [encourage] adherence to the goals and procedures dictated by the statute." Hearst Corp. v. Hoppe, 90 Wash.2d 123, 140, 580 P.2d 246 (1978). RCW 42.17.340(4) provides for these penalties and states:
Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not less than five dollars and not to exceed one hundred dollars for each day that he was denied the right to inspect or copy said public record.

A. Standard of Review
Yousoufian contends that appellate courts must review de novo the trial court's determination of where the proper per day penalty, between $5 and $100 per day, should rest. Suppl. Br. of Pet'r at 12. In support of his argument, Yousoufian cites RCW 42.17.340(3) which provides, in pertinent part, that "[j]udicial review of all agency actions *468 taken or challenged under RCW 42.17.250 through 42.17.320 shall be de novo." Suppl. Br. of Petr at 13 (emphasis added).
While we review questions of law de novo, Pacheco v. Ames, 149 Wash.2d 431, 436, 69 P.3d 324 (2003), the PDA specifically provides that "it shall be within the discretion of the court to award such person an amount not less than five dollars and not to exceed one hundred dollars for each day that he was denied the right to inspect or copy said public record." RCW 42.17.340(4) (emphasis added). In King County v. Sheehan, 114 Wash.App. 325, 350-51, 57 P.3d 307 (2002), the Court of Appeals held that under RCW 42.17.340(4) an appellate courts "function is to review claims of abuse of trial court discretion with respect to the imposition or lack of imposition of a penalty, not to exercise such discretion ourselves." There the court reasoned that the PDA "grants discretion to the trial court, not to this appellate court, to set the amount of the penalty within the minimum and maximum ranges." Id. at 350, 57 P.3d 307.
Yousoufians contention that we must review de novo the trial courts determination of proper PDA penalties is unpersuasive in light of the aforementioned authority and because the trial courts determination of the appropriate per day penalty is not an "agency action," that being the only type of action for which RCW 42.17.340(3) mandates de novo review. Furthermore, the PDAs penalty provision clearly grants the trial court "discretion" to determine the appropriate per day penalty, and this grant of discretion is only meaningful if appellate courts review the trial courts imposition of that penalty under an abuse of discretion standard of review. We agree with the analysis the Court of Appeals set forth in Sheehan and conclude, therefore, that the trial courts determination of appropriate daily penalties is properly reviewed for an abuse of discretion.

B. Whether the PDA Requires a Penalty for Each Record
Yousoufian asserts that under the plain meaning of the PDA's penalty provision, the trial court is required to assess penalties for each public record that is requested. The county responds that the penalty provision is ambiguous and that an interpretation of the statute requiring penalties for every record would lead to absurd results contrary to the spirit of the PDA. The Court of Appeals agreed with the county, on this issue, stating, "[t]he literal meaning of RCW 42.17.340(4) contemplates a penalty for each day a record request is unlawfully denied; the statute does not require the penalty to be multiplied by the number of records responsive to a single request." Yousoufian, 114 Wash.App. at 848, 60 P.3d 667.
Before reaching the core of Yousoufian's argument on this issue, we must first determine whether the trial court is obligated to award a penalty at all. If the trial court is not required to award a penalty, then it follows that the trial court need not award a penalty for each requested record.
In Lindberg v. Kitsap County, 133 Wash.2d 729, 746-47, 948 P.2d 805 (1997), we upheld a trial court's order awarding $1,100 as "`a combination of attorney fees and ... [an] award of some penalties.'" Pursuant to RCW 42.17.340(4), the trial court designated $507.70 as the penalty award but failed to explain the basis for this amount. Although the plaintiffs argued that the trial court erred in refusing to assess the statutory minimum penalty for each day the records were wrongfully withheld, we concluded that the trial court did not abuse its discretion in determining the penalty. Four justices of this court dissented, believing that a remand was necessary so that the trial court could determine the number of days that the records were wrongfully withheld and assess a penalty between $5 and $100 for each of those days.
In Amren v. City of Kalama, 131 Wash.2d 25, 37, 929 P.2d 389 (1997), however, we unanimously determined that an agency violated the PDA, and therefore, the plaintiff was "entitled" to a statutory penalty for each day the requested report was wrongfully withheld. We reasoned that "when an agency erroneously denies a public record and a party has prevailed against the agency in obtaining a copy of the public record an award is warranted." Id. The case was remanded to the trial court for a determination *469 of "an award not less than $5 and not more than $100 for each day the report has been withheld." Id. In Limstrom v. Ladenburg, 136 Wash.2d 595, 617, 963 P.2d 869 (1998), we reaffirmed Amren, stating, "[w]e have interpreted [RCW 42.17.340(4)] to entitle a requester to an award if an agency erroneously denies disclosure of a public record." (Emphasis added.)
In Sheehan, the Court of Appeals was faced with the conflicting decisions of Lindberg and Amren when it was asked to decide if penalties are mandatory under the PDA. After a lengthy analysis of both cases and the legislative history of RCW 42.17.340(4), the Sheehan court determined that Lindberg was wrongly decided. Critical to the court's determination was its observation that in 1992, the legislature amended the pertinent sections of RCW 42.17.340. Prior to the 1992 amendment, the statute provided that it shall be within the discretion of the court to award such person an amount not to exceed twenty-five dollars for each day that he was denied the right to inspect or copy said public record. Former RCW 42.17.340(3) (1987). In 1992, however, the statute was amended to provide that "it shall be within the discretion of the court to award such person an amount not less than five dollars and not to exceed one hundred dollars for each day that he was denied the right to inspect or copy said public record." LAWS of 1992, ch. 139, 8 (emphasis added). The Sheehan court determined that "by so amending the statute, the legislature limited trial court discretion, so that a penalty of at least $5 per day is now mandatory where an agency erroneously withholds a public record." Sheehan, 114 Wash.App. at 355, 57 P.3d 307.
We agree with the Sheehan courts resolution of this issue. The PDA plainly states that the trial court has "discretion" in setting the penalty at not less than $5 but not more than $100. If the trial court refuses to assess any penalty, then it is setting the penalty at less than $5, which is contrary to the unambiguous language used in RCW 42.17.340(4). As stated in Sheehan, the legislature limited the trial courts discretion by amending RCW 42.17.340 in 1992 to set a minimum penalty, which the trial court must assess, if the agency is found to have violated the PDA.
Having determined that the trial court must award penalties when the PDA is violated, we must now decide whether the trial court is required to award a penalty for each requested record. Although RCW 42.17.340(4) states that penalties are assessed "for each day that [the plaintiff] was denied the right to inspect or copy said public record," the definitions section of the PDA provides that "[a]s used in this chapter, the singular shall take the plural and any gender, the other, as the context requires." RCW 42.17.020.
We have held that "[a] statute is ambiguous if it can be reasonably interpreted in more than one way." Vashon Island Comm. for Self-Govt v. Wash. State Boundary Review Bd., 127 Wash.2d 759, 771, 903 P.2d 953 (1995). RCW 42.17.340(4) is, in our view, ambiguous. We say that because we are instructed by the PDAs definitions section to interpret terms as either singular or plural "as the context requires." If the term "record" is interpreted as "record," then the plain meaning would suggest that courts should assess penalties for every "record" that is requested. However, if the term is interpreted as "records," then the plain meaning would suggest that courts should assess penalties only for each request regardless of the number of records sought.
When a statute is ambiguous, "this court will resort to principles of statutory construction, legislative history, and relevant case law to assist in interpreting it." State v. Watson, 146 Wash.2d 947, 955, 51 P.3d 66 (2002). Moreover, "[w]hen construing a statute, the court must ascertain and give effect to the Legislature's intent." Shoreline Cmty. College Dist. No. 7 v. Employment Sec. Dept., 120 Wash.2d 394, 405, 842 P.2d 938 (1992).
Both parties agree that there is only one case in which this issue is discussed, Lindberg v. Kitsap County, 82 Wash.App. 566, 919 P.2d 89 (1996), revd, 133 Wash.2d 729, 948 P.2d 805 (1997). In Lindberg, the Court of Appeals considered the phrase "said public record" as used in RCW 42.17.340(4), and it *470 stated, "[t]he statutory use of singular phrasing is significant." Lindberg, 82 Wash.App. at 575, 919 P.2d 89. The court then remanded for the trial court to award "a statutory penalty award for each record [the plaintiffs] requested." Id. As noted above, we later reversed the Court of Appeals decision to remand the case to the trial court because we concluded that it was unnecessary to determine the number of days that the documents were wrongfully withheld. Lindberg, 133 Wash.2d at 747, 948 P.2d 805.
The Court of Appeals decision in Lindberg is not helpful here because its determination that penalties are based on each record was not affirmed by this court. However, our decision in Lindberg is also unhelpful because it was based on our conclusion that the trial court did not need to award a penalty at all. Thus, the only prior case interpreting the term "record" provides little assistance in determining the issue presented to us here.
Both parties ask us to consider legislative intent. Yousoufian argues that "given that a liberal construction is mandated for purposes of assessing penalties, it stands to reason that each record requested, when improperly withheld, will result in a discrete penalty." Br. of Appellant at 37. The county responds that the legislature did not intend to require penalties for each record because this would create a windfall only for individuals who make a voluminous request and do nothing to encourage disclosure for reasonable requests. Suppl. Br. of Respts at 11. The Court of Appeals agreed with the county, reasoning that "[u]nder Yousoufians interpretation, agencies that acted in good faith but failed to respond adequately to broad requests for multiple documents would often pay higher penalties than agencies that refused to disclose a single document in bad faith." Yousoufian, 114 Wash.App. at 848, 60 P.3d 667.
The PDA provides, in pertinent part, that "[t]he provisions of this chapter shall be liberally construed to promote ... full access to public records so as to assure continuing public confidence of fairness of elections and governmental processes." RCW 42.17.010. We have stated that RCW 42.17.340(4) is "a penalty to enforce the strong public policies underlying the public disclosure act." Amren, 131 Wash.2d at 35-36, 929 P.2d 389. And "[w]hen determining the amount of the penalty to be imposed the existence or absence of [an] agency's bad faith is the principal factor which the trial court must consider." Id. at 37-38, 929 P.2d 389 (second emphasis omitted) (quoting Yacobellis v. City of Bellingham, 64 Wash.App. 295, 303, 825 P.2d 324 (1992)).
Although the PDAs purpose is to promote access to public records, this purpose is better served by increasing the penalty based on an agency's culpability than it is by basing the penalty on the size of the plaintiffs request. Indeed, it seems unlikely that the legislature intended to authorize a penalty that Yousoufian once estimated at between $1,534,855 and $30,697,100, considering that the county did not act in bad faith. Therefore, based on the ambiguity of the statute and the purpose for enacting the PDA, we conclude that RCW 42.17.340(4) does not require[9] the assessment of per day penalties for each requested record.[10]

C. Reduction of Penalty Days
Yousoufian argues that the trial court erred in subtracting 527 days from the number of days that the daily penalty was assessed against (hereafter referred to as the "penalty period") because the only time limitation on filing suit is the PDA's five-year statute of limitations. Br. of Appellant at 39. The county relies on Doe I v. Wash. State Patrol, 80 Wash.App. 296, 908 P.2d 914 *471 (1996), and responds that the trial court did not abuse its discretion in reducing the penalty period. Br. of Resp'ts at 36. Applying an abuse of discretion standard of review to this issue, the Court of Appeals upheld the reduction of time from the penalty period. Yousoufian, 114 Wash.App. at 851, 60 P.3d 667.
Again we must decide the proper standard of review. In particular, we must determine whether abuse of discretion is the appropriate standard for reviewing the trial court's decision to reduce the penalty period. As noted above, this court reviews questions of law de novo. Pacheco, 149 Wash.2d at 436, 69 P.3d 324. In our judgment, the question of whether RCW 42.17.340(4) authorizes a trial court to reduce the penalty period is a question of law. De novo, therefore, is the proper standard of review, not the abuse of discretion standard.
PDA penalties are awarded "for each day that [the plaintiff] was denied the right to inspect or copy said public record." RCW 42.17.340(4) (emphasis added). The PDA also provides that "[a]ny action brought under the provisions of this chapter must be commenced within five years after the date when the violation occurred." RCW 42.17.410.
In Doe I, the Court of Appeals upheld, under an abuse of discretion standard of review, the trial courts reduction of the PDA penalty period by almost four months because the plaintiff "either requested or acquiesced in various delays in hearing the matter." Doe I, 80 Wash.App. at 304, 908 P.2d 914 (footnote omitted). These delays included the plaintiffs request for a continuance so that she could retain counsel and both parties agreement to forgo a preliminary hearing.
When interpreting a statute, our primary duty is to give effect to the legislatures intent. State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003). "If the statute's meaning is plain on its face, then courts must give effect to its plain meaning as an expression of what the Legislature intended." State v. J.M., 144 Wash.2d 472, 480, 28 P.3d 720 (2001). Furthermore, we will not "add words or clauses to an unambiguous statute when the legislature has chosen not to include that language." State v. Delgado, 148 Wash.2d 723, 727, 63 P.3d 792 (2003).
In this case, the PDA unambiguously requires a penalty "for each day." The PDA does not contain a provision granting the trial court discretion to reduce the penalty period if it finds the plaintiff could have achieved the disclosure of the records in a more timely fashion. While the trial court could utilize its discretion by decreasing the per day penalty during this period, the only limitation on the number of days comprising the penalty period is the five-year statute of limitations.
Although the Court of Appeals determined here and in Doe I that agencies should not pay for delays that the plaintiff could have limited, the PDA does not grant such discretion. The Court of Appeals decisions in the instant case and Doe I are not persuasive on this issue because, in our view, neither opinion engaged in the correct statutory analysis of RCW 42.17.340(4). Instead, the courts merely deferred to the trial courts interpretations of the PDA by applying an abuse of discretion standard of review. Because the PDA does not include a limitation on the penalty period beyond the statute of limitations, we are of the view that the PDA does not allow a reduction of the penalty period when the trial court finds the plaintiff could have filed suit earlier than it did.[11]

III
The county contends that the Court of Appeals erred in characterizing the penalty *472 assessed against it as the minimum penalty. The county makes this argument even though it concedes that a penalty greater than the minimum was justified here. Specifically, it asserts that the Court of Appeals should have considered that the trial court actually increased the total penalty by assessing the per day penalty against the number of days each of the 10 groups of records were withheld rather than basing the penalty on two requests, as the county proposed. The Court of Appeals rejected this challenge to the penalty on procedural grounds, stating that "the county has not filed a cross-appeal or assigned error to the trial court's method of calculation." Yousoufian, 114 Wash.App. at 854 n. 4, 60 P.3d 667.
The process for determining the appropriate PDA award is best described as requiring two steps: (1) determine the amount of days the party was denied access and (2) determine the appropriate per day penalty between $5 and $100 depending on the agency's actions. Lindberg, 133 Wash.2d at 749, 948 P.2d 805 (Durham, C.J., dissenting). The determination of the number of days is a question of fact. Id. However, as discussed above, the determination of the appropriate per day penalty is within the discretion of the trial court. RCW 42.17.340(4).
The Court of Appeals correctly ignored the manner in which the records were grouped because the county failed to assign error to the trial court's method of calculation. Therefore, we agree with the Court of Appeals that assessing the minimum penalty of $5 a day was unreasonable considering that the county acted with gross negligence.[12]

IV
In conclusion, the Court of Appeals correctly determined that while a trial court must assess penalties of at least $5 per day if the PDA is violated, the trial court is not required to assess those penalties for each requested record. However, the Court of Appeals erred in affirming the trial court's decision to reduce the number of days that it assessed the daily penalty because the PDA does not authorize courts to limit the penalty period if a plaintiff does not file suit within a reasonable time.
Lastly, the Court of Appeals correctly refused to consider the trial court's method of calculating the penalty period when it determined that the statutory minimum penalty was imposed because the number of days that a plaintiff is denied access to requested records is a question of fact, and the county failed to assign error to this finding.
Consequently, we affirm in part, and reverse in part the Court of Appeals' decision, and remand this case to the trial court for the imposition of penalties above the statutory minimum for each day that Yousoufian was denied access to the requested records, including the days between the last correspondence and the filing of suit.
WE CONCUR: JOHNSON, IRELAND, BRIDGE, OWENS, JJ.
FAIRHURST, J., (concurring).
I concur with the majority's holding, except for dicta that leaves open the question of whether the trial court has the discretion to assess penalties on a per record basis or to treat multiple requests as a single request. Majority at 470 n.8, n.9. I would hold that the proper focus of the penalty analysis is the "request." After determining the number of days that the agency has denied a request, the trial court should determine the proper amount of the penalty based on the agency's culpability.
RCW 42.17.320 requires an agency to respond to requests for public records by one of three methods: (1) providing the record, *473 (2) acknowledging receipt of the request and providing an estimate of the amount of time that will be required to respond, or (3) denying the request. RCW 42.17.340(4) provides the means by which a person may seek judicial review of an agency's denial of his or her request to inspect or copy a public record. The portion of RCW 42.17.340(4) at issue here requires the trial court to assess a penalty based on "each day that [the requester] was denied the right to inspect or copy said public record." The action that begins the process is the request.
The majority merely concludes that the public disclosure act (PDA) does not require the assessment to be based on the number of records requested, without saying what it should be based on. I would hold simply that the PDA requires penalty assessments to be based on the number of days a request has been denied by an agency.
MADSEN, J., (concurring in part in the dissent).
I agree with the dissent that RCW 42.17.340(4) provides for a per record penalty. I agree with the majority's resolution of the remaining issues.
CHAMBERS, J., (concurrence/dissent).
I agree with the majority that a trial court's assessment of penalties for violations of the public disclosure act (PDA), RCW 42.17.340(4), should be reversed only for abuse of discretion. However, I disagree with the majority's conclusion that the trial court abused its discretion in assessing the minimum daily penalty of $5. Majority at 472. Issues involved in a public disclosure request may become complex. The form and timing of a request or series of requests for public records may raise issues with respect to how many requests were made, how many records were requested, whether the right to inspect or copy was denied, and if so for how many days. These issues should be left to the sound discretion of the trial court.
Here, Judge Learned entered detailed findings with respect to the number of documents, days in which they were denied, and circumstances surrounding the county's denial of Armen Yousoufian's right to inspect and copy. The trial court could have concluded under these circumstances that the documents were denied for fewer days, but in as much as there is a finding of fact that the documents were denied until the date the suit was filed, I agree it was an abuse of discretion not to assess a penalty for each day the documents were found to be denied. See majority at 471.
The PDA explicitly leaves it within the sound discretion of the trial court to set the amount of the daily penalty within the statutory range. RCW 42.17.340(4). Here Judge Learned considered the findings with respect to the number of requests, records requested, and days denied, as well as the circumstances surrounding the denials, including the county's negligence and lack of either good or bad faith. In light of all those considerations, she concluded a $5 per day penalty was appropriate. Whether individual members of this court would have reached a different conclusion is irrelevant on review. Our task in resolving this issue is limited to whether the assessment of a $5 per day penalty, in light of the complex issues and circumstances presented in this case, was an abuse of discretion. Finding no abuse of discretion, I would affirm the trial court's assessment of a $5 per day penalty and would reverse the Court of Appeals on this issue.
I agree with the majority's resolution of the remaining issues.
SANDERS, J., (dissenting in part).
The majority's analysis of the public disclosure act (PDA), chapter 42.17 RCW, though valid in some respects,[1] falls woefully short in one: it does not require a per record penalty. I also offer my thoughts on an appropriate penalty for King County's glaring failure to properly handle Armen Yousoufian's PDA request.

*474 I.
We have consistently recognized the PDA is a "strongly worded mandate for broad disclosure of public records." Hearst Corp. v. Hoppe, 90 Wash.2d 123, 127, 580 P.2d 246 (1978); see also Amren v. City of Kalama, 131 Wash.2d 25, 31, 929 P.2d 389 (1997); Progressive Animal Welfare Soc'y v. Univ. of Wash., 125 Wash.2d 243, 251, 884 P.2d 592 (1994) (PAWS II); Spokane Police Guild v. Wash. State Liquor Control Bd., 112 Wash.2d 30, 33, 769 P.2d 283 (1989). The PDA does not equivocate in its directive toward agencies asked by an inquisitive citizen to disclose records: "Responses to requests for public records shall be made promptly by agencies...." RCW 42.17.320 (emphasis added). Yet no matter how strong a mandate or how clear a directive may be, it amounts to nothing more than words on paper unless it is vigorously enforced by an independent judiciary. RCW 42.17.340.
The judiciary is uniquely the diligent citizen's vehicle to compel obedience to the PDA's "strongly worded mandate" of full disclosure. Hearst Corp., 90 Wash.2d at 127, 580 P.2d 246. The PDA expressly grants original jurisdiction to the superior court to "require the responsible agency to show cause why it has refused to allow inspection or copying of a specific public record or class of records." RCW 42.17.340(1). There the citizen may compel public disclosure without fear of the undue burdens generally associated with litigation, as the noncompliant agency must pay the citizen's costs and reasonable attorney fees incurred to enforce the PDA directive. RCW 42.17.340(4).
However in the eyes of the PDA reimbursement of litigation costs is not enough to ensure government compliance with the full disclosure mandate:

In addition [to awarding the successful litigant costs and reasonable attorney fees], it shall be within the discretion of the court to award such person an amount not less than five dollars and not to exceed one hundred dollars for each day that he was denied the right to inspect or copy said public record.

Id. (emphasis added). Yet despite the penalty's unequivocal deterrent purpose and clear dictate to impose a daily fine for an agency's denial of the litigant's "right to inspect or copy said public record," the majority "conclude[s] that RCW 42.17.340(4) does not require the assessment of per day penalties for each requested record." Majority at 470 (footnote omitted). The majority asserts a two-fold basis for this claim: first, the definitional provision that "the singular shall take the plural... as the context requires," RCW 42.17.020, and second, the alleged exorbitant penalty that would ensue by imposing a per day, per record penalty. See majority at 469-470. I disagree.
As with any statute, courts must decline to judicially construe language which is unambiguously plain. Limstrom v. Ladenburg, 136 Wash.2d 595, 606, 963 P.2d 869 (1998) And though a statute is ambiguous when its text is susceptible to two or more reasonable interpretations, and therefore may be judicially construed, a statute is not ambiguous merely because two or more interpretations are conceivable. Shoop v. Kittitas County, 149 Wash.2d 29, 36, 65 P.3d 1194 (2003).
RCW 42.17.340(4) is plain on its face as it requires a penalty for "each day" the agency wrongfully denies the requesting litigant "said public record." "[S]aid public record" unquestionably references the condition precedent to imposing a penalty: the success of a "person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record." Id. (emphasis added). Despite RCW 42.17.020's latitude to sometimes construe singular terms as though they were plural, such command applies only "as the context requires." RCW 42.17.020 (emphasis added). But by RCW 42.17.340(4)'s clear terms an agency must be penalized every time it wrongfully denies access to "any public record." The "context" of RCW 42.17.340(4) does not require an interjection of the plural "records" in lieu of the singular "said public record."
Nor does the majority make logical sense when it permits the trial court to impose merely a per request penalty, much less requires it as the concurrence opines. Compare majority at 470 (PDA does not require a per record penalty) with concurrence at 2 *475 (PDA requires a per request penalty and nothing more).
Here the trial court found 18 records were unlawfully withheld from disclosure pursuant to Yousoufian's two PDA requests. In the majority's and concurrence's view, King County would be fined the same amount for providing 17 of the requested records as it would for providing none. Despite the equivalency of the fines, the gravity of the two violations is markedly different. I would venture it is obviously much worse to withhold 18 documents than one, and only a per record penalty reflects this. Or perhaps the enlightened citizen should merely alter his or her approach to file 18 separate requests? The majority offers dicta to counter this possibility, suggesting the trial court possesses the "ability to determine that multiple requests are actually one single request based on the subject matter and timing of the requests." Majority at 470 n.10. But nothing in the PDA supports this insinuation. Rather it is simply a judicial invention made of whole cloth. Apply the statute!
It also does not follow a priori that an absurdly excessive penalty would ensue if we strictly enforced RCW 42.17.340(4). Contra majority at 470 ("[I]t seems unlikely that the legislature intended to authorize a penalty that Yousoufian once estimated at between $1,534,855 and $30,697,100 considering the county did not act in bad faith."). Elementary statutory construction requires "[a]lthough the court should not construe statutory language so as to result in absurd or strained consequences, neither should the court question the wisdom of a statute even though its results seem unduly harsh." Duke v. Boyd, 133 Wash.2d 80, 87, 942 P.2d 351 (1997) (citation omitted). In 2003 alone King County adopted an operating budget based on over $3 billion in revenue.[2] Even assuming King County was penalized the entire amount of what Mr. Yousoufian claimed to be the maximum allowable fine, it would still amount to only one percent of King County's 2003 operating budget. Docking an agency one percent of its operating budget might be just the necessary medicine to force an agency into full PDA compliance. Moreover the amount at issue in the special election concerning Seahawks Stadium (now Qwest Field) was $300 million. A just penalty must reflect these realities.
Certainly if we are predisposed to shield the government from the statutory penalty for its misconduct, anything above a slap on the wrist is excessive. But the bottom line is that the purpose of any penalty is to punish current misconduct sufficiently to deter future misconduct. See Sintra, Inc. v. City of Seattle, 131 Wash.2d 640, 662, 935 P.2d 555 (1997). Only "'"strict enforcement" of fees and fines will discourage improper denial of access to public records.'" PAWS II, 125 Wash.2d at 272, 884 P.2d 592 (emphasis added) (quoting Progressive Animal Welfare Soc'y v. Univ. of Wash., 114 Wash.2d 677, 686, 790 P.2d 604 (1990) (quoting Hearst Corp., 90 Wash.2d at 140, 580 P.2d 246)). I see nothing excessive about imposing a per record, per day penalty.[3]

II.
The majority correctly holds this trial court erred by imposing a minimum penalty of $5 per day, as such a penalty was insufficient in light of King County's gross negligence. I agree a minimum penalty is plainly insufficient. Rather the plain language of the PDA as well as its purposes demands a penalty closer to $100.
At the expense of repetition, I quote the text of RCW 42.17.340(4) once again: "it shall be within the discretion of the court to award such person an amount not less than five dollars and not to exceed one hundred *476 dollars for each day that he was denied the right to inspect or copy said public record." The "discretion" referenced in the statute is not whether a penalty should be imposed, but rather how much a penalty should be. In other words, RCW 42.17.340(4) establishes a strict liability penalty within the specified range which the trial court must impose if an agency violates the PDA. Amren, 131 Wash.2d at 37, 929 P.2d 389 (holding "that when an agency erroneously denies a public record and a party has prevailed against the agency in obtaining a copy of the public record an award is warranted").
The trial court's discretion enters only to determine where on the statutory scale the appropriate penalty lies. But we know from Amren that an agency's good faith reliance on an exemption to the PDA disclosure requirement is insufficient to escape an RCW 42.17.340(4) penalty:
[T]his provision is treated as a penalty which is not dependent upon a showing of an agency's good or bad faith in its claim of exemptions under the Act. Requiring that an agency act unreasonably before imposing a penalty would be similar to a requirement of bad faith, which is not required under the Act.
Amren, 131 Wash.2d at 37, 929 P.2d 389. Thus, even if an agency acts in total good faith but is still noncompliant, a penalty of at least $5 per day, per document is required. RCW 42.17.340(4). If we accept the conclusion that a diligent agency that barely violates the PDA with minimal consequences is still subject to a fine of at least $5, one cannot justifiably impose the same minimal penalty against a negligent agency, much less an agency that is grossly negligent, or worse yet, intentionally violative of the PDA's requirements to substantial harm.
As such, the default penalty from which the trial court should use its discretion is the half-way point of the legislatively established range: $52.50 per day, per document.[4] The trial court could then apply various criteria to shift the per diem penalty up or down.
Mr. Yousoufian suggests the court consider (1) the extent of any intent to withhold documents the agency knows are subject to disclosure, (2) the agency's failure to adopt and maintain a reasonable indexing system to ensure prompt compliance with the PDA's requirements, (3) the degree of public concern affected by the disclosure of the documents, (4) the need to deter future violations, (5) whether the agency acted in good faith relying on an exemption to the PDA's requirements or the extent of the agency's diligence to comply with the PDA request, and (6) any economic loss suffered by the litigant.
Applying the aforementioned criteria, I find a penalty in the upper range to be necessary here. Time is sometimes of the essence with public disclosure, and that is exemplified by the instant case. Mr. Yousoufian's May 30, 1997 request sought timely public disclosure of information related to a study relied on by supporters of the proposed football stadium, the public funding for which was set for special election on June 17, 1997. See Ex. 171; see also Brower v. State, 137 Wash.2d 44, 51-52, 969 P.2d 42 (1998) (considering constitutionality of election). Washingtonians were asked by the legislature to adopt by referendum a bill providing for the financing and construction of Qwest Field and its adjacent exhibition center. Brower, 137 Wash.2d at 49, 969 P.2d 42. Public financing for this project was estimated at $300 million. LAWS OF 1997, ch. 220, § 210.
Specifically, Mr. Yousoufian sought "the widely quoted `Conway Study' that many politicians have referred to in connection with the economic impacts of sports stadiums and any other such studies" as well as "all related records including, but not limited to, how and why and by whom the study was ordered, its cost, and any previous or subsequent studies on sports stadiums." Ex. 171 (emphasis added) However King County timely provided only the Conway Study and advised Mr. Yousoufian the other records "would not be available for three weeks because they had to be retrieved from Archives" (conveniently after the election), even though the official who responded "did not specifically inquire into the location of other *477 studies before responding." Clerk's Papers (CP) at 1011. Moreover it transpired that "much of Mr. Yousoufian's PDA request involved documentation not yet stored in Archives." Id. Mr. Yousoufian was wholly denied his right to be timely informed of the merits of the stadium proposal before the vote took place. Just as sending the placekicker into the game to boot the winning field goal after time expires is too late, so is providing an inquisitive voter information related to an election after the votes are cast. With elections such as these, the adage "better late than never" is simply inadequate.
King County's egregious misconduct continued even after the vote which formed the basis for why the records were sought took place. As the trial court found:
Mr. Fenton [Mr. Yousoufian's attorney] sent another letter on December 31st to explain that Mr. Yousoufian's request had not been adequately answered. Oma LaMothe responded on January 14th, 1998, that the Executive was only responsible for providing documents within its office and that "hundreds of hours" had already been spent trying to retrieve responsive documents. This statement was factually and legally incorrect. When the county did make an informed effort to find the documents, they were located and produced within a couple of days by Pat Steele.
CP at 1019. Such devious misconduct cannot be equated to an agency acting with the utmost good faith. Moreover the stakes of this project were enormous. Even if King County acted with such good faith, its failure to comply with Mr. Yousoufian's PDA request affected the "public concern" far more than any other failure resulting in a mere inconsequential inconvenience to the litigant alone. See supra p. 8. Accordingly, a penalty at or near $100 per day is not only necessary but also required to punish King County's misconduct. Courts are routinely used to punish private citizens where the context so demands. See RCW 19.86.090 (treble damages authorized for violation of Consumer Protection Act). There is simply no justification for an allegedly impartial court to alter that approach when it comes to the government.

CONCLUSION
I join the majority insofar as it holds a trial court may not statutorily shorten the penalty period based on when a PDA litigant's claim ripens. However the majority abdicates its duty to enforce the PDA's strongly worded mandate when it chips away at the only tool to enforce "full access to information concerning the conduct of government on every level," which is "a fundamental and necessary precondition to the sound governance of a free society," RCW 42.17.010(11), by rewriting the statute to dispense with the per record penalty.
I therefore dissent in part.
NOTES
[1] Concerning the "Conway Study," Yousoufian went on to state that "[w]hat I wish to see not only includes the study itself, including any and all addenda, attachments, updates, etc. but all related records including, but not limited to, how and why and by whom the study was ordered, its cost, and any previous or subsequent studies on sports stadiums." CP at 37.
[2] Yousoufian filed an affidavit explaining that he had difficulty finding an attorney willing to take his case because (1) the attorney who he had earlier retained would not represent him in the litigation, and (2) the county denied in writing that it had any more documents responsive to his request.
[3] No testimony was offered at the trial, the trial being limited to the submission of affidavits.
[4] At oral argument, before this court, Yousoufian's counsel indicated that his client was requesting penalties based on the wrongful withholding of 18 records.
[5] Four of the 10 groups did not have 527 days subtracted because these groups of records, although wrongfully withheld, were released before Yousoufian filed suit.
[6] The trial court arrived at 5,090 days by adding together the number of days each of the 10 groups of records were wrongfully withheld and subtracting 527 days from each group that was produced after the lawsuit was filed. Each group of records was assigned a letter from A to J and a number of penalty days as follows: Group A was 4 days late; Group B was 49 days late; Group C was 76 days late; Group D was 126 days late; Group E was 843 days late; Group F was 651 days late; Group G was 855 days late; Group H was 663 days late; Group I was 887 days late; and Group J was 936 days late. Through this formula, the overall number of days late totaled 5,090.
[7] The trial court made a $10 mathematical error in its calculation of penalties. Under the trial court's formula, the award to Yousoufian should have been $25,450.
[8] Yousoufian also lists as an issue for review "[w]hether the Court of Appeals erred in ruling that RCW 42.17.260(1) allows only `reasonable disclosure' of discrete, non-exempt public records requested." Pet. for Review at 2. However, Yousoufian misstates the Court of Appeals' interpretation of the PDA. The Court of Appeals determined that the PDA requires complete disclosure of requested documents unless they are exempt. Yousoufian, 114 Wash.App. at 857, 60 P.3d 667. Applying this standard, the Court of Appeals agreed with the trial court's finding that complete disclosure occurred. Id. Yousoufian has not challenged that finding here. Because the Court of Appeals in fact held that the PDA requires complete disclosure, this issue is not discussed further.
[9] The county did not cross-appeal the trial court's decision to group the records. Yousoufian, 114 Wash.App. at 849 n. 3, 60 P.3d 667. Instead, the county argued at the Court of Appeals that the trial court has discretion to group the records. Suppl. Br. of Resp'ts at 10. Therefore, the issue of whether the trial court has the discretion to assess penalties per record if it should so choose is not before us.
[10] Although Allied Daily Newspapers argues in its amicus brief that this holding will merely inspire plaintiffs to file individual requests for each record, this holding does not suggest that the trial court lacks the ability to determine that multiple requests are actually one single request based on the subject matter and timing of the requests. Br. of Amicus at 15 (Jan. 28, 2004).
[11] This holding does not foreclose the trial court's ability to apply the common law doctrine of laches. However, laches "does not bar an action short of the statute of limitations applicable thereto, unless it is made to appear that, by reason of the delay in asserting a claim, the other party has altered his position or has been otherwise injured by the delay." Luellen v. City of Aberdeen, 20 Wash.2d 594, 602, 148 P.2d 849 (1944), overruled on other grounds by Stenberg v. Pac. Power Light Co., 104 Wash.2d 710, 709 P.2d 793 (1985). In this case, laches does not apply because the county did not alter its position regarding the requested documents because Yousoufian waited 647 days to file suit.
[12] Yousoufian seeks attorney fees on appeal by inserting one line in his brief stating, in its entirety, that "[p]ursuant to RAP 18.1, appellant respectfully requests reimbursement of all attorney's fees and costs incurred in this appeal." Br. of Appellant at 47. RAP 18.1 "requires more than a bald request for attorney fees on appeal. Argument and citation to authority are required under the rule to advise us of the appropriate grounds for an award of attorney fees as costs." Wilson Court Ltd. P' ship v. Tony Maroni's, Inc., 134 Wash.2d 692, 710 n. 4, 952 P.2d 590 (1998) (citations omitted). Here, Yousoufian made only a cursory request for fees and failed to set forth the legal basis for an award. Therefore, the request for fees on appeal is denied.
[1] For instance the majority correctly holds "the PDA unambiguously requires a penalty `for each day'" the agency is noncompliant with the PDA request. Majority at 471.
[2] See KING COUNTY, ECONOMIC AND REVENUE FORECAST 7, available at http://www. metrokc.gov/budget/2004/Adopted/2Econ.pdf (last visited Sept. 28, 2004).
[3] This is not to suggest the PDA contemplates a penalty per page. Rather, as Yousoufian sufficiently asserts in his briefing, a trial court could consider whether a record is bound or has attachments, in which case the document could be treated as a single record that is withheld. See Pet'r's Answer to Brs. of Amici Curiae at 14. However the agency's failure to include pages of a single record would undeniably lead to a "refus[al]to allow inspection or copying of a specific public record or class of records." RCW 42.17.340(1).
[4] This number is precisely the mid-point between $5 and $100.