[No. 60723-5-I.   Division One.   July 21, 2008.]

ARTHUR S. WEST ET AL., *Appellants*, v. THE PORT OF OLYMPIA ET AL., *Respondents*.

110

*Arthur West*, pro se.

*Bernard H. Friedman*; *Philip A. Talmadge* and *Emmelyn Hart-Biberfeld* (of *Talmadge Law Group, PLLC*); and *William J. Crittenden*, for appellants.

*Carolyn A. Lake* (of *Goodstein Law Group, PLLC*); *Eric J. Camm* (of *The Otto Law Group, PLLC*); and *Matthew R. Hansen* and *Jeffrey A. Beaver* (of *Graham & Dunn, PC*), for respondents.

*Michele L. Hubbard* on behalf of Allied Daily Newspapers of Washington, Washington Newspaper Publishers Association, and Washington Coalition for Open Government, amici curiae.

*Leslie J. Olson* on behalf of League of Women Voters of Washington, amicus curiae.

*Michael J. Reitz* on behalf of Evergreen Freedom Foundation, amicus curiae.

¶1 GROSSE, J. — This case involves three separate public disclosure requests for documents from the Port of Olympia (Port) regarding its lease negotiations with Weyerhaeuser Company. Because the Port had already executed the lease with Weyerhaeuser at the time of this request, the Port's reliance upon that exemption to withhold records was improper. Once an agency implements a policy or recommendation, records pertaining to that policy or recommendation no longer fall within the ambit of the deliberative process exemption of the Public Records Act (PRA).[1] We reverse and remand to the trial court to determine whether any of the other exemptions claimed by the Port are applicable.

## FACTS

¶2 Walter Jorgensen and Eve Johnson[2] (together Jorgensen), Arthur West, and David Koenig each made separate requests to the Port seeking public disclosure of records pertaining to its lease negotiations with Weyerhaeuser. The lease was executed on August 22, 2005. West made his initial request on November 2, 2005, Jorgensen on January 6, 2006, and Koenig on January 17, 2006.

¶3 West requested the Port provide him with all relevant records, including "[a]n index to, and all Port records concerning, the recent repaving project and other developments required in the Port's recent contract with Weyerhaeuser, including all correspondence, written or

[1] Ch. 42.56 RCW.

[2] Eve Johnson is substituted for the League of Women Voters of Thurston County.

electronic." West also requested any records relating to the Port's compliance with the State Environmental Policy Act (SEPA).[3] The Port responded by letter on November 16, 2005, declaring that there was no index of the records, no paving project, and no SEPA records associated with the lease. The Port did, however, enclose copies of the signed Weyerhaeuser lease and its SEPA policy.

¶4 Dissatisfied with the Port's response, West filed a pro se complaint in Thurston County Superior Court contending the Port had wrongfully withheld records in violation of the PRA. West made several further demands for disclosure from the Port and served it with a show cause order setting a hearing date for January 27, 2006. The Port disclosed some additional records and provided West with a privilege log (and later a second privilege log) for those documents it believed exempt from disclosure. The show cause hearing was rescheduled to February 17, 2006, and Weyerhaeuser intervened later that month.

¶5 Meanwhile, on January 6, 2006, Jorgensen also requested records from the Port relating to the Weyerhaeuser lease. On January 11, the Port responded, requesting additional time to review and prepare the records. The Port subsequently disclosed a number of records on January 17 and 23, 2006. On January 24, Jorgensen filed a complaint in the trial court alleging the Port violated the PRA. Jorgensen also filed a motion to show cause, and the Port produced privilege logs on January 25 and 27, 2006.

¶6 On February 7, 2006, the Port presented the court with 2,409 pages of sealed documents that it claimed were exempt from disclosure along with related privilege logs and requested in camera review for both the Jorgensen and West actions. The trial court ruled that the Port had failed to respond to Jorgensen's records request in a timely manner and continued the show cause hearing. The court also awarded Jorgensen costs and reasonable attorney fees

---

[3] Ch. 43.21C RCW.

to that date. Weyerhaeuser then intervened in the Jorgensen action.

¶7 The Jorgensen and West actions were consolidated on March 3, 2006. That same day, the Port disclosed a number of other documents. Weyerhaeuser filed a brief arguing that specific documents were exempt from disclosure as proprietary, private, and confidential.

¶8 After its in camera review of the 2,409 pages, the trial court issued a 51-page memorandum decision. While the court found a number of documents to be disclosable in their entirety or with redactions, it found that most of the documents fell within the deliberative process and research data exemptions to the PRA. The vast majority of the documents found exempt appear to pertain to the lease negotiations and included earlier versions of the final lease signed on August 22, 2005. The trial court found a number of documents exempt as attorney-client communications. Additionally, the court found some documents exempt as trade secrets.

¶9 On April 13, 2006, the Port produced 217 pages of documents ordered released by the court. West, joined by Jorgensen, moved to have documents disclosed that the Port had failed to release as ordered. The Port conceded that it had overlooked some records and released them.

¶10 Jorgensen, West, and the Port all moved for reconsideration. Apart from ordering the disclosure of a few additional documents, the trial court generally denied the parties' claims on reconsideration. West then moved to have the remaining records released under SEPA, which the court denied.[4] Jorgensen, acting through new counsel, Philip Talmadge and Emmelyn Hart-Biberfeld, moved for public disclosure penalties and attorney fees. The trial court determined that records were improperly withheld for

---

[4] The court denied the motion in an oral ruling on July 7, 2006, though filing of the written order was delayed until September 15, 2006, due to the untimely death of Bernie Friedman, Jorgensen's original attorney. Reconsideration was denied on September 26, 2006.

a total of 123 days.[5] The court set the penalty at $60 per day for each day the documents were withheld. The trial court also reduced the amount of attorney fees requested both in hours and in hourly fee charged by the attorneys.

¶11 Meanwhile, back on January 17, 2006, David Koenig submitted his own public records request to the Port, also seeking records related to the Weyerhaeuser lease. The Port responded on January 19 and subsequently sent Koenig a series of privilege logs that appeared to be identical to those filed in the Jorgensen/West litigation. In April 2006, Koenig filed a complaint in the trial court and Weyerhaeuser again intervened. The parties stipulated to the entry of orders and rulings on disclosure identical to those made in the Jorgensen/West action. Judgment was entered for Koenig for $9,360 in attorney fees and costs and $6,960 in penalties (116 days at $60 per day).

¶12 The parties filed separate notices of appeal with the Washington Supreme Court. West's and Jorgensen's suits were automatically consolidated on appeal because they were consolidated at the trial court.[6] The Supreme Court denied direct review and transferred the case to the Court of Appeals, Division Two. Division Two consolidated the Koenig appeal with Jorgenson/West and then transferred the case to this court. Along the way, several motions and rulings have been made, many of which involved pro se litigant Arthur West.[7] West's objection to attorney fees has been dismissed because of lack of standing.

---

[5] The penalty period ran from January 28, 2006, the day the Port made its last initial disclosure, to May 30, 2006, the date of its last disclosure.

[6] RAP 3.3(a).

[7] West made several motions to this court, all of which were denied. This court retained the issue of whether terms should be awarded to Jorgensen's attorneys for the time spent on what amounted to frivolous motions. We grant Jorgensen's motion for terms and refer the matter to a commissioner to establish the amount of attorney fees that should be awarded Jorgensen for their response to the motions.

## ANALYSIS

■■ ¶13 The PRA " 'is a strongly worded mandate for broad disclosure of public records.' "[8] The legislation had its origins in an initiative put forth by Washington citizens.[9] The legislature clearly intended that exemptions to disclosure should be narrowly construed.[10]

*Deliberative Process Exemption*

■ ¶14 The trial court found many of the documents exempt from disclosure under the PRA's deliberative process exemption. RCW 42.56.280[11] provides:

> Preliminary drafts, notes, recommendations, and intra-agency memorandums in which opinions are expressed or policies formulated or recommended are exempt under this chapter, except that a specific record is not exempt when publicly cited by an agency in connection with any agency action.

The purpose of this exemption is to permit "frank and uninhibited discussion during the decision-making process."[12] To come within the ambit of this exemption, an agency must show:

- the records contain predecision opinions or recommendations expressed as part of the deliberative process, and

- disclosure would be harmful to the deliberative or consultative function of the process, and

---

[8] *Soter v. Cowles Publ'g Co.*, 162 Wn.2d 716, 730, 174 P.3d 60 (2007) (quoting *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978)).

[9] Initiative 276. *State of Washington Official Voters Pamphlet*, General Election 10-11, 108 (Nov. 7, 1972).

[10] *King County v. Sheehan*, 114 Wn. App. 325, 338, 57 P.3d 307 (2002) ("the thrice-repeated legislative mandate that exemptions under the public records act are to be narrowly construed").

[11] Effective July 1, 2006, the public disclosure provisions formerly codified in chapter 42.17 RCW were made part of the newly named PRA and recodified in chapter 42.56 RCW (LAWS OF 2005, ch. 274, § 103). The applicable statutory language is substantively the same.

[12] *Hearst Corp.*, 90 Wn.2d at 132.

- disclosure would interfere with the flow of recommenda-
tions, observations, and opinions, and

- the records reflect policy recommendations and opinions
and are not simply the raw factual data underlying a
decision.[13]

Records that contain subjective evaluations are not exempt
if they are treated as raw data and are not the subject of
further deliberation and consideration.[14] However, once the
agency implements the policies or recommendations, such
records are no longer exempt under the deliberative process
exemption.[15] Here, since the lease was executed prior to the
records requests, documents relating thereto were no
longer covered by this exemption.

¶15  In upholding the Port's nondisclosure of records, the
trial court relied extensively on this court's decision in
*American Civil Liberties Union of Washington v. City of
Seattle (ACLU)*.[16] The trial court's ruling clearly indicates
that it viewed the deliberative process exemption as having
been extended by this court in that case. But, the trial court
misread *ACLU* in finding the deliberative process exemp-
tion applicable here.[17] The records sought in *ACLU* were
lists of issues drawn up by a union and the city of Seattle for
purposes of contract negotiations. The court reasoned that
the disputed lists were the starting point of the negotiation
process and the disclosure could negatively impact that
process. In reaching that decision, the *ACLU* court noted
that "labor negotiations are an ongoing process" in which
the participants "must respond to the ever-changing tab-
leau of collective bargaining"[18] and, further, that such a

---

[13] *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 256, 884
P.2d 592 (1994) (*PAWS*).

[14] *PAWS*, 125 Wn.2d at 256-57.

[15] *PAWS*, 125 Wn.2d at 257.

[16] 121 Wn. App. 544, 89 P.3d 295 (2004).

[17] *ACLU*, 121 Wn. App. 544.

[18] *ACLU*, 121 Wn. App. at 553.

tableau would not be complete until the parties adopted a contract.[19]

¶16 Here, the trial court extended *ACLU*'s reasoning to the Port because the Port was constantly involved in the process of negotiating leases with different tenants. The trial court reasoned that although the Port's negotiations with Weyerhaeuser for this particular lease were complete, public disclosure of certain documents might adversely impact the Port's ability to get the "best deal" in future negotiations. For instance, the Port could be disadvantaged in future lease negotiations if the other party knew what terms or provisions the Port may be willing to deviate from in its standard lease.

¶17 But the *ACLU* decision did not go so far. There the court stated:

> This ongoing process involves negotiators and City officials in what is the essence of the deliberative process. *Until the results of this policy-making process are presented to the city council for adoption,* politicization and media comments will by definition inhibit the delicate balance—the give-and-take of the City's positions on issues concerning the police department.[20]

Thus, the *ACLU* court impliedly held that the exemption applied only until the results of the policy-making process were presented to the city council for adoption. Here, the Port has already executed the lease. As noted in *Progressive Animal Welfare Society v. University of Washington* (*PAWS*), "[o]nce the policies or recommendations are implemented, the records cease to be protected under this exemption."[21] *PAWS* and *ACLU* both dictate our holding that the deliberative process exemption was no longer applicable to the records pertaining to the Weyerhaeuser lease. Accordingly, we remand to the trial court to determine whether any of the other exemptions claimed by the Port are applicable.

---

[19] *ACLU*, 121 Wn. App. at 554.

[20] *ACLU*, 121 Wn. App. at 554 (emphasis added).

[21] 125 Wn.2d 243, 257, 884 P.2d 592 (1994) (citing *Brouillet v. Cowles Publ'g Co.*, 114 Wn.2d 788, 799-800, 791 P.2d 526 (1990)).

*Other Exemptions*

¶18 The trial court found a number of records nondisclosable as attorney-client communications and trade secrets. The PRA does not require disclosure of records either exempt or prohibited from disclosure under other statutes.[22] Communications between attorneys and their clients are statutorily privileged.[23] And, the Uniform Trade Secrets Act[24] protects trade secrets. Jorgensen does not contend that the trial court erred in finding a number of documents nondisclosable as attorney-client communications and trade secrets.[25] Thus, we did not consider the trial court's specific rulings regarding those exemptions.

¶19 In addition to the deliberative process exemption, the Port also claimed several documents equally exempt under the research data exemption.[26] In its ruling regarding some documents, the trial court correctly found the research data exemption not applicable. "Research data" was defined in *Servais v. Port of Bellingham* as a " 'body of facts and information collected for a specific purpose and derived from close, careful study, or from scholarly or scientific investigation or inquiry.' "[27]

¶20 However, the record before us indicates that the trial court did not necessarily consider other exemptions claimed by the Port once it found the deliberative process exemption applied. In its March 29, 2006 order, the trial court noted:

> [T]his court did not address every reason why an exemption might be claimed in every case unless it was necessary to rule

---

[22] RCW 42.56.070(1).

[23] RCW 5.60.060(2)(a).

[24] Ch. 19.108 RCW.

[25] West does argue that the attorney-client privilege is inapplicable, but his briefing is inadequate to merit review. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

[26] RCW 42.56.270(1) states that "research data obtained by any agency within five years of the request for disclosure when disclosure would produce private gain and public loss."

[27] 127 Wn.2d 820, 832, 904 P.2d 1124 (1995).

out a claim. Once an exemption was determined it was not necessary for the court to engage in any further analysis that achieved the same result. Sometimes the court did address all the arguments when the exemption could have been claimed on more than one basis but this was to offer future guidance of a general nature for subsequent rulings herein and not considered necessary in every instance.

As a result, these issues will have to be addressed on remand should the parties pursue them.

■■ ¶21 Weyerhaeuser also asserted several items exempt as trade secrets. "Trade secrets" are defined under the Uniform Trade Secrets Act (UTSA), chapter 19.108 RCW. To fall within the ambit of the trade secret exemption such information must be " 'novel' in the sense that the information must not be readily ascertainable from another source."[28] The definition of a "trade secret" is a matter of law under the UTSA, but the determination of whether specific information is a trade secret is a factual question.[29] Weyerhaeuser requests that we sustain the trial court's findings and conclusions regarding the applicability of the UTSA to those documents. However, the parties did not appeal from those rulings and we will not consider them on appeal.

*SEPA*

■ ¶22 West argues that SEPA[30] mandates that all documents relating to the Weyerhaeuser lease be disclosed. To support this proposition, West cites two cases, neither of which are apropos to the case at bar. The court in *Norway Hill Preservation & Protection Ass'n v. King County Council* evaluated the information the government should consider in its decision making, not the extent such information

---

[28] *Spokane Research & Def. Fund v. City of Spokane*, 96 Wn. App. 568, 578, 983 P.2d 676 (1999).

[29] *Ed Nowogroski Ins., Inc. v. Rucker*, 137 Wn.2d 427, 971 P.2d 936 (1999).

[30] Ch. 43.21C RCW.

should be disclosed to the public.[31] Likewise, *King County v. Washington State Boundary Review Board* is inapposite.[32] That case dealt with evaluating the type of information government bodies should consider in their decision-making processes, not whether such information should be disclosed.

¶23 West fails to cite any specific provisions of SEPA that mandate unlimited disclosure. Indeed, the Department of Ecology's own regulations require it to comply with the PRA. SEPA is not applicable here and does not provide for more disclosure than the PRA.

*Penalty*

¶24 Jorgensen and West contend the trial court erred when it failed to assess a daily penalty for each individual record withheld. Koenig disagrees but requests he be treated equally in the event Jorgensen and West prevail on this claim. RCW 42.56.550(4) provides that in addition to attorney fees and costs, "[i]t shall be within the discretion of the court to award such person an amount not less than five dollars and not to exceed one hundred dollars for each day" a record is improperly withheld. The court in *Yousoufian v. Office of King County Executive* held that under the PRA, "penalties need not be assessed per record, and . . . trial courts must assess a per day penalty for each day a record is wrongfully withheld."[33] Here, the records reviewed by the trial court were in packets and comprised of multiple pages. The court clearly found the Port had improperly withheld documents and acted contrary to the express purpose of the PRA. However, the court also found the Port's behavior was not so egregious as to mandate the maximum penalty. The trial court chose to impose a daily penalty rather than a per record penalty.

---

[31] 87 Wn.2d 267, 272, 552 P.2d 674 (1976).

[32] 122 Wn.2d 648, 664, 860 P.2d 1024 (1993).

[33] 152 Wn.2d 421, 425, 98 P.3d 463 (2004).

¶25 We review a trial court's award of statutory public disclosure penalties for an abuse of discretion.[34] A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds.[35] We do not substitute our judgment for that of the trial court's but seek only to determine if substantial evidence supports the trial court's conclusion.[36] Here, however, we are unable to determine whether the trial court would have assessed that same penalty had it applied the correct legal standard in reviewing the documents withheld by the Port. Thus on remand, the trial court may choose to impose a more stringent penalty.

*Attorney Fees*

¶26 While the award of attorney fees under the PRA is not discretionary, the amount awarded is.[37] *Mahler v. Szucs* requires a court to use the lodestar method in determining the amount of an award of attorney fees and costs.[38] Under this method, a court must determine whether counsel expended a reasonable number of hours in securing a successful recovery for the client, exclude any duplicative or wasteful hours, and determine the reasonableness of counsel's hourly rate.[39]

¶27 Here, the trial court awarded fees in an amount less than the request, both for the hours spent and for the hourly charge. Jorgensen does not dispute the trial court's ruling on the number of hours for which fees should be awarded, only the hourly fee restriction imposed.

¶28 Jorgensen requested an attorney fee award of $300 per hour for Bernie Friedman and Talmadge and $225 per

[34] *Yousoufian*, 152 Wn.2d at 431.

[35] *King County v. Seawest Inv. Assocs., LLC*, 141 Wn. App. 304, 314, 170 P.3d 53 (2007).

[36] *Kunkel v. Meridian Oil, Inc.*, 114 Wn.2d 896, 903, 792 P.2d 1254 (1990).

[37] *Amren v. City of Kalama*, 131 Wn.2d 25, 35, 929 P.2d 389 (1997).

[38] 135 Wn.2d 398, 433, 957 P.2d 632 (1998).

[39] *Mahler*, 135 Wn.2d at 433-34.

hour for Hart-Biberfeld. The Port's attorneys were billing $200 per hour pursuant to a retainer agreement. The court limited attorney fees to $250 per hour for all attorneys.

¶29 Jorgensen argues that the trial court's restriction on attorney fee amounts to those charged by Olympia-based attorneys might deter lawyers in larger markets from bringing PRA cases as suits of this nature will almost inevitably be brought in Thurston County. But the trial court did not make its award solely on that basis.

¶30 The trial court made the following findings of fact with regard to the attorney fees:

12. Washington courts have adopted the lodestar method to assess reasonable attorney fees in public records cases. This methodology is a guiding light and not an anchor. It requires the Court to determine what a reasonable hourly rate is in the community for work of this nature, taking into account the uniqueness of the question, the novelty of the issues, the experience of the attorneys , and the venue in which the parties find themselves. A lodestar award is arrived at by multiplying a reasonable hourly rate by the number of hours reasonably worked.

13. Bernard Friedman's rate of $300 per hour is not reasonable for a case of this nature. Although Philip Talmadge can bill $300 per hour for work that requires his special expertise, that rate is unreasonable in a case of this type. $250 per hour for Emmelyn Hart-Biberfeld is a reasonable hourly rate given that she performed the majority of the work on the motion. The court therefore finds that the reasonable hourly rate for all attorneys is $250.00.

14. The next step in the lodestar calculation is to determine the reasonable number of hours expended by counsel. The Court is not required to accept unquestioningly fee affidavits from counsel. From the Court's previous experience in this case and in private practice, the Court finds that 6 hours per day for two working weeks, or a total of 60 hours of attorney time, is reasonable for the work of the Talmadge Law Group.

15. The reasonable number of hours for Mr. Friedman to have expended in this case, from start to finish, is 150 hours.

¶31 Clearly, the trial court considered the various factors enumerated in *Mahler*. Hence, we cannot say that the limitation imposed on attorney fees was an abuse of discretion.

¶32 Jorgensen and Koenig request an award of attorney fees on appeal. As the prevailing parties they are entitled to attorney fees and costs pursuant to RAP 18.1.[40] Because we are otherwise remanding this matter, we also remand for a determination by the trial court of attorney fees and costs at the conclusion of all proceedings.

¶33 We affirm the trial court's ruling in part and reverse and remand this cause for further proceedings consistent with this opinion.

DWYER, A.C.J., and LAU, J., concur.

Review denied at 165 Wn.2d 1050 (2009).

---

[40] *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 114 Wn.2d 677, 690-91, 790 P.2d 604 (1990).