262 P.3d 121 (2011)
Ken BRICKER, Appellant and Cross-Respondent,
v.
STATE of Washington, DEPARTMENT OF LABOR AND INDUSTRIES, and Judy Schurke, Director, Dept. of Labor & Industries, Respondents and Cross-Appellants.
No. 40064-2-II.
Court of Appeals of Washington, Division 2.
September 20, 2011.
*122 Christopher William Bawn, Attorney at Law, Olympia, WA, for Appellant/Cross-Respondent.
John S. Barnes, Office of the Attorney General, Olympia, WA, Anastasia R. Sandstrom, Attorney General's Office, Seattle, WA, for Respondents/Cross-Appellants.
QUINN-BRINTNALL, J.
¶ 1 After the Department of Labor and Industries (L & I) conceded that it had failed to respond in a timely manner to Ken Bricker's public records request, the trial court imposed a per diem penalty of $90 for the untimely disclosure of 16 documents and a per diem penalty of $15 for the untimely disclosure of 3 additional documents, for a total penalty of $29,445. Bricker appeals the trial court's refusal to impose a per document penalty in addition to the per diem penalty, and L & I cross appeals the amount of the per diem penalty. Because the trial court's award did not constitute an abuse of discretion, we affirm.

FACTS
¶ 2 Donald Ulmer, an electrical inspector for L & I, inspected a house Bricker owned in July 2007. Bricker was a former contractor. After the inspection, Ulmer cited Trinity Construction for electrical violations related to bathroom fixtures. When Trinity informed Ulmer that Bricker had done the work, Ulmer reissued the citations to Bricker. The citations alleged that Bricker failed to obtain or post work permits, failed to request inspections, and covered or concealed installations prior to inspection.
¶ 3 Bricker first called Ulmer to discuss the citations. In a certified letter dated October 1, 2007, he subsequently contested the citations and asked for information about them. Specifically, Bricker requested "a copy of all permits issued and copies of inspections and correction requests by all inspectors on that residence." Clerk's Papers (CP) at 81. Bricker's letter did not refer to the Public Records Act (PRA), ch. 42.56 RCW.
¶ 4 Ulmer read the letter and put it in Bricker's file. He assumed that Bricker would receive the requested records through his appeal of the citations. Ulmer did not provide Bricker with any records nor did he forward Bricker's request to L & I's public records unit or his supervisor. Although L & I usually trains new employees on public records requirements, Ulmer had received no such training. Bricker allegedly made additional phone calls to Ulmer, Ulmer's supervisor, Dene Koons, and Koons's supervisor, Reuel Paradis, in unsuccessful attempts to get the information he had requested in his October letter. (These employees did not remember Bricker's phone calls.) Bricker appealed the citations, noting in his appeal letters that L & I had never responded to his requests for information.
¶ 5 In a further attempt to gain the requested information, Bricker hired an attorney and filed a lawsuit under the PRA on July 22, 2008. L & I's public records unit responded by providing to Bricker 16 responsive *123 documents on August 8, 2008. On November 7, 2008, L & I provided 3 signed versions of documents produced on August 8. Bricker's pro se appeal of his citations was successful; the administrative law judge voided the citations after holding that no permit or inspection was required for his work.
¶ 6 After L & I conceded liability in Bricker's PRA action, the trial court held a penalty hearing. One employee testified that L & I issued the citations to Bricker in the mistaken belief that he was "covering" for Trinity, which already had received several citations. 2 Report of Proceedings (RP) at 252. L & I employees insisted, however, that regardless of who did the work, they believed it warranted citations.
¶ 7 In an oral ruling, the trial court explained that although it found no intentional noncompliance with public records requirements and no bad faith in L & I's actions, the key factor was the lack of governmental accountability. The court found no mitigating factors to excuse L & I's lack of compliance from October 1, 2007[1] to August 8, 2008, and stated that a penalty of $90 per day and per document was appropriate for the 16 documents withheld during that time. The court imposed a penalty of $15 per day and per document for the 3 documents disclosed on November 7, 2008.
¶ 8 After L & I submitted proposed findings of fact and conclusions of law and a judgment summary of $537,615, the trial court reconsidered its decision and, in a letter ruling, informed the parties that it would not impose a per document penalty. The court noted that it had been greatly troubled by the amount of the earlier penalty, which had been based on its incorrect application of the "Yousoufian factors." CP at 258. The court explained that it would impose a per diem penalty only:
The purpose of imposing a penalty under the [PRA] is to promote public access to public records; to encourage, and demand, governmental transparency. It is not, in this court's opinion, meant as compensation for damages. Further, that purpose is best served by imposing a penalty at the high end of the possible range, as the court did in this case in part. Under the facts presented here, there is no appropriate purpose that would be served in imposing a per day and per document penalty.
CP at 259. The court attached a revised judgment summary of $29,445 as well as revised findings of fact and conclusions of law, and it awarded Bricker attorney fees in an amount to be determined.
¶ 9 Bricker now appeals the trial court's refusal to impose a per document penalty, and L & I cross appeals the trial court's decision to set the per diem penalty at $90.[2]

ANALYSIS

Per Document Penalty
¶ 10 We review a trial court's award of penalties under the PRA for an abuse of discretion. Yousoufian v. Office of Ron Sims, 168 Wash.2d 444, 458, 229 P.3d 735 (2010) (Yousoufian V); West v. Port of Olympia, 146 Wash.App. 108, 122, 192 P.3d 926 (2008), review denied, 165 Wash.2d 1050, 206 P.3d 657 (2009). Determining a PRA penalty involves two steps: (1) determining the number of days the party was denied access and (2) determining the appropriate per day penalty, depending on the agency's actions. Yousoufian V, 168 Wash.2d at 459, 229 P.3d 735. The applicable statutory provision provides:
Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record.
*124 RCW 42.56.550(4).[3] The PRA does not otherwise specify how to calculate a penalty. Yousoufian V, 168 Wash.2d at 459, 229 P.3d 735.
¶ 11 The trial court eliminated its initial per record penalty after reviewing the relevant case law, which included Yousoufian v. Office of Ron Sims, 152 Wash.2d 421, 98 P.3d 463 (2004) (Yousoufian II). Yousoufian II dealt with the disclosure and penalty requirements set forth in the former Public Disclosure Act (PDA), ch. 42.17 RCW. 152 Wash.2d at 429-30, 98 P.3d 463. Former RCW 42.17.340(4) (1992) was the penalty statute then in effect and contained the same language now found in the PRA penalty statute, RCW 42.56.550(4). In discussing whether the Act requires a per record penalty, the Yousoufian II court referred first to former RCW 42.17.340(4) and then to a definitional statute in the PDA, stating that "`[a]s used in this chapter, the singular shall take the plural and any gender, the other, as the context requires.'" 152 Wash.2d at 433, 98 P.3d 463 (alteration in original) (quoting RCW 42.17.020).
¶ 12 The Supreme Court determined that the reference in former RCW 42.17.340(4) to requiring a penalty for each day the plaintiff was denied the right to inspect or copy "said public record" was ambiguous because, in conjunction with RCW 42.17.020, the reference to "record" could be interpreted as singular or plural. Yousoufian II, 152 Wash.2d at 434, 98 P.3d 463. Accordingly, it was unclear whether courts should assess penalties for every "record" requested or whether they should assess penalties only for each request, regardless of the number of records sought. Yousoufian II, 152 Wash.2d at 434, 98 P.3d 463. The court held that the PDA's purpose of promoting access to public records was better served by increasing the penalty based on the public agency's culpability rather than on the size of the plaintiff's request. Yousoufian II, 152 Wash.2d at 435, 98 P.3d 463. In Yousoufian II, the per document penalty could have added up to millions of dollars, and the court considered it unlikely that the legislature intended to authorize such a penalty where the agency did not act in bad faith. 152 Wash.2d at 435-36, 98 P.3d 463. Consequently, the court held that the PDA did not require the assessment of per day penalties for each requested record. Yousoufian II, 152 Wash.2d at 436, 98 P.3d 463.
¶ 13 Bricker argues that this analysis does not control here because, as recodified, the PRA does not contain a definitional provision with the "singular shall take the plural" language. See RCW 42.56.010. L & I responds that similar language is found in RCW 1.12.050, which provides in part that "words importing the plural may be applied to the singular," and that the legislature intended this principle to apply to the PRA without expressly including it therein. See Daly v. Chapman, 85 Wash.2d 780, 782, 539 P.2d 831 (1975) (legislature is presumed to be aware of its own prior enactments). Furthermore, recent PRA decisions have reconfirmed that a trial court has discretion to reject a per record penalty without reference to any ambiguity in RCW 42.56.550(4). See Sanders v. State, 169 Wash.2d 827, 864, 240 P.3d 120 (2010) (upholding trial court's discretion not to impose penalties for each wrongfully withheld document individually); Soter v. Cowles Pub'g Co., 162 Wash.2d 716, 751, 174 P.3d 60 (2007) (referring to penalty for each day the "records" were wrongfully withheld); West, 146 Wash.App. at 121, 192 P.3d 926 (noting without objection that the trial court chose to impose a daily penalty rather than a per record penalty).
¶ 14 Bricker asserts further that even if a per document penalty is not imposed, the trial court must group the documents and impose a per group penalty, as did the trial courts in Yousoufian and Sanders. In Yousoufian V, the trial court grouped the documents at issue into 10 records, based on time of production and subject matter, and the Court of Appeals upheld the resulting imposition of a "per group" penalty. 168 Wash.2d at 456-57, 229 P.3d 735. In Sanders, the trial court divided the documents into two records *125 for penalty purposes, again based on subject matter, and the Supreme Court affirmed. 169 Wash.2d at 864, 240 P.3d 120. Here, contrary to Bricker's assertions on appeal, the trial court both identified and grouped the documents at issue.[4] The first group consisted of 16 responsive documents disclosed on August 8, and the second consisted of 3 documents disclosed on November 7. Bricker provides no authority for his claim that the trial court's imposition of penalties based on this grouping constituted an abuse of discretion.[5]
¶ 15 Finally, Bricker argues that the trial court abused its discretion by allowing the amount of the judgment that would result from the imposition of both a per day and per record penalty to affect its decision. Bricker argues that the amount of the final judgment should be irrelevant in assessing PRA penalties, but the total penalty clearly is a legitimate consideration. See Yousoufian V, 168 Wash.2d at 459, 229 P.3d 735 (one factor to consider is penalty amount necessary to deter future misconduct); West, 146 Wash.App. at 121, 192 P.3d 926 (trial court found Port's behavior not so egregious as to mandate maximum penalty and imposed daily rather than per record penalty). We hold that the trial court did not abuse its discretion in refusing to impose a penalty for each individual record.[6]

Per Diem Penalty
¶ 16 In its cross appeal, L & I challenges the per diem penalty of $90 for the 16 documents it did not provide between October 1, 2007 and August 8, 2008. The maximum daily penalty is $100, and L & I contends that the trial court abused its discretion in setting a high-end per diem penalty where the public agency involved was noncompliant with PRA requirements but acted in good faith.
¶ 17 In its most recent Yousoufian decision, the Supreme Court explained that while the existence or absence of bad faith is an important factor in determining PRA penalties, "a strict and singular emphasis on good faith or bad faith is inadequate to fully consider a PRA penalty determination." Yousoufian V, 168 Wash.2d at 461, 229 P.3d 735. The Yousoufian V court set forth mitigating and aggravating factors that trial courts may consider in imposing penalties, adding that these factors overlap, may not apply in every case, and are not exclusive. 168 Wash.2d at 467-68, 229 P.3d 735. These factors were similar to the Yousoufian IV factors that framed the trial court's findings here.[7]Yousoufian v. Office of Sims, 165 Wash.2d 439, 458-59, 200 P.3d 232 (2009) (Yousoufian IV), modified on recons, 168 Wash.2d 444, 229 P.3d 735.
¶ 18 The Yousoufian IV mitigating factors focus on the lack of clarity in the public records request and the agency's efforts to comply both with that request and with PRA requirements. The trial court found no mitigating factors in this case.[8] Bricker's request *126 for documents was clear, the agency made no response even after Bricker followed up on his request, and Ulmer received no PRA training and made no inquiries about how to handle Bricker's request for information.
¶ 19 The trial court then addressed the Yousoufian aggravating factors:
Factor 8: Delayed response, especially in circumstances making time of the essence.
Mr. Bricker had citations that he did not think he deserved and he tried to get the information so he could get the citations taken care of and if not that then to prepare for an administrative hearing. He never got his information until just before the hearing.
Factor 9: Lack of strict compliance.
There was not any compliance when Mr. Ulmer placed the letter in his file and did nothing further with it.

Factor 10: Lack of proper training and supervision of personnel and response.... Mr. Koons was Mr. Ulmer's supervisor. Mr. Koons was the person who wanted to make very sure Trinity was going to be held accountable, but the issue is that Mr. Bricker did not need to be the person in the middle of that. Mr. Koons and Mr. Ulmer did not deal with Mr. Bricker because they ignored his request or put it aside.
Factor 11: Unreasonableness of any explanation for noncompliance.
Calling the explanation[,] as counsel for defense termed it[,] ["] lame ["] is a start. Putting the request in a file and sticking the file away does not make any sense.
Factor 12: Negligent, reckless, wanton bad faith, or intentional noncompliance.
Mr. Ulmer did not intentionally fail to comply with the [PRA]; he did not know about it. I am not finding that he exercised any bad faith. There were some significant problems in his office[,] though[,] with a combination of folks[,] and that would include Mr. Koons, Mr. Paradis, and Mr. Ulmer.
Factor 13: Dishonesty.
There is no finding of dishonesty in the communications to Mr. Bricker.
Factor 14: The potential for public harm, including economic loss or loss of governmental accountability.
This court was able to view first hand the demeanor of all of the witnesses as they explained their involvement in this case, except for Mr. Koons, who testified by telephone. The key factor established in this case is a loss of governmental accountability. Even during trial, the witnesses for [L & I] were unprepared, they had not reviewed their records, and said "I don't remember, I don't remember, I don't remember." That could have been true.
CP at 263.
¶ 20 L & I does not assign error to these findings but argues that they do not support a per diem penalty of $90 per day because they demonstrate the agency's lack of bad faith and its unintentional noncompliance with the law. L & I also asserts that the trial court did not consider the final two Yousoufian factors, set forth in Yousoufian IV as "personal economic loss" and "a penalty amount necessary to deter future misconduct considering the size of the agency and the facts of the case." 165 Wash.2d at 459, 200 P.3d 232. Yousoufian V altered the economic loss factor as follows: "any actual personal economic loss to the requestor resulting from the agency's misconduct, where the loss was foreseeable to the agency." 168 Wash.2d at 468, 229 P.3d 735. L & I urges this court to remand so that the trial court can reconsider the penalty in light of these additional factors.
¶ 21 We see no need for such a remand. The only testimony relevant to foreseeable personal economic loss concerned Bricker's fees for appealing his citations, and it is unlikely that considering these meritorious expenditures would have reduced the per diem penalty. With regard to the deterrence factor, the trial court entered a separate conclusion of law stating that "[t]o deter future noncompliance it is appropriate to set the penalty at the high range of the scale rather than the midpoint." CP at 264. Consequently, the trial court did consider the final Yousoufian aggravating factor in imposing a penalty amount necessary to deter *127 future misconduct, and a remand for further consideration of the aggravating factors is unwarranted.
¶ 22 In arguing that the court set the per diem penalty too high, L & I also contends that the agency misconduct in Yousoufian was far more egregious but resulted in a penalty of only $45 per day. Yousoufian V, 168 Wash.2d at 469, 229 P.3d 735. The Supreme Court described King County's misconduct as follows:
It is fair to say that the unchallenged findings of fact demonstrate that over a period of several years the county repeatedly failed to meet its responsibilities under the PRA with regard to Yousoufian's request. Specifically, the county told Yousoufian that it had produced all the requested documents, when in fact it had not. The county also told Yousoufian that archives were being searched and records compiled, when that was not correct. In addition, the county told Yousoufian that information was located elsewhere, when in fact that was not the case. After years of delay and misrepresentation on the part of the county, Yousoufian found it necessary to file suit against the county in order to obtain all of the requested documents. Nevertheless, it would still take another year for the county to completely and accurately respond to Yousoufian's request.
Yousoufian V, 168 Wash.2d at 456, 229 P.3d 735. In short, the county acted with gross negligence. Yousoufian V, 168 Wash.2d at 457, 229 P.3d 735.
¶ 23 L & I argues that here, by contrast, only one employee's noncompliance was at issue, and his conduct was not representative of the agency as a whole, as demonstrated by the prompt response of the public records unit to his lawsuit. L & I emphasizes that no bad faith was involved and that the penalty amount should so reflect.
¶ 24 Bricker responds that misconduct in other cases is irrelevant and that this court should consider only the misconduct and aggravating factors evident here in assessing whether the high-end penalty constitutes an abuse of discretion. He argues further that even if we do consider the Yousoufian misconduct, the agency misconduct here was worse. He points out that the trial court found significant problems in Ulmer's office "with a combination of folks" that were not addressed until Bricker sued for his records. CP at 263.
¶ 25 Bricker's assessment of the comparative misconduct here and in Yousoufian is questionable, but he correctly argues that the trial court found almost all of the Yousoufian aggravating factors established in this case. The agency misconduct at issue shows an absence of the accountability that is fundamental to the PRA. See Yousoufian V, 168 Wash.2d at 466, 229 P.3d 735 (PRA serves as forceful reminder that public agencies remain accountable to the people of Washington). Even so, the trial court imposed a much more moderate penalty than originally contemplated by eliminating a per record penalty and imposing only a high-end per day penalty. See West, 146 Wash.App. at 121, 192 P.3d 926 (trial court imposed daily rather than per record penalty because maximum penalty was not warranted). Moreover, only one group of records was assessed the $90 per diem penalty here, unlike the 10 groups that each received the $45 per diem penalty in Yousoufian V. The $90 per diem penalty imposed here was not an abuse of discretion given Bricker's need to institute legal action before the agency adhered to its obligations under the law.

Attorney Fees on Appeal
¶ 26 Bricker requests an award of attorney fees on appeal. A party who prevails in a PRA appeal is entitled to attorney fees whether he prevails in whole or in part. See Sanders, 169 Wash.2d at 872, 240 P.3d 120 (awarding Justice Sanders 25 percent of his costs and attorney fees on appeal because he prevailed in part in his PRA claims); Yousoufian V, 168 Wash.2d at 469, 229 P.3d 735 (prevailing party on appeal is entitled to fees under RCW 42.56.550(4)). Because we deny L & I's cross appeal and uphold the penalty in all respects, we award Bricker only those attorney fees incurred in defending the per diem penalty.
¶ 27 We affirm the trial court's imposition of a $90 per day penalty as well as its refusal *128 to impose per record penalties and award Bricker the attorney fees attributable to defending the $90 per day penalty.
We concur: HUNT, P.J., and VAN DEREN, J.
NOTES
[1] L & I did not argue that Bricker's October 1, 2007 letter was not a PRA request.
[2] L & I does not challenge the $15-per-day penalty imposed for the three copies of signed documents provided November 7, 2008.
[3] In an amendment that took effect on July 22, 2011, the legislature struck the words "not less than five dollars," thereby eliminating the $5 per day minimum penalty. Laws of 2011, ch. 273, § 1.
[4] The trial court found that L & I failed to disclose a total of 19 responsive documents, and Bricker did not challenge that finding below or assign error to it in his appellate briefs. The court based that number on the list of L & I-supplied documents in Bricker's trial brief, some of which were nonresponsive.
[5] The trial court did not impose a per record penalty and the State did not appeal the penalty imposed for the second group of records. Nor does it challenge the trial court's decision to count signed and unsigned versions of the same document as separate records. We would question, however, a per record award of penalties based on both signed and unsigned but otherwise duplicate documents.
[6] This holding is bolstered by the ambiguity in Bricker's initial request for information. Although the State concedes that Bricker's initial request constituted a public records request, Bricker never cited to nor referenced the PRA therein.
[7] The trial court characterized its findings regarding the mitigating and aggravating factors as conclusions of law, but they are more appropriately viewed as findings of fact that support the existence or absence of each factor. See Valentine v. Dep't of Licensing, 77 Wash.App. 838, 846, 894 P.2d 1352 (findings incorrectly denominated as conclusions are reviewed as findings), review denied, 127 Wash.2d 1020, 904 P.2d 300 (1995).
[8] Bricker assigns error to some of the trial court's findings of fact but does not support these assignments with argument, so we do not consider them further. RAP 10.3(a)(6); see also In re Estate of Lint, 135 Wash.2d 518, 532, 957 P.2d 755 (1998).