COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

| | | |
|---|---|---|
| JEFF ZINK & DONNA ZINK, husband and wife, | ) ) ) | No. 34599-8-III |
| Appellants, | ) ) | |
| v. | ) ) ) | ORDER AMENDING OPINION |
| CITY OF MESA, a Washington municipal corporation, | ) ) ) | |
| Respondent. | ) ) | |

IT IS ORDERED the opinion filed June 14, 2018, is amended as follows:

On page 8, first full paragraph, line 7, replace the word "Benton" with the word "Franklin."

PANEL: Judges Siddoway, Lawrence-Berrey, Korsmo

FOR THE COURT:

_____
ROBERT E. LAWRENCE-BERREY
Chief Judge

**FILED**
**JUNE 14, 2018**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

JEFF ZINK & DONNA ZINK, husband
and wife,                                      )
                                               )          No.  34599-8-III
                                               )
                      Appellants,              )
                                               )
        v.                                     )
                                               )          OPINION PUBLISHED
CITY OF MESA, a Washington municipal    )          IN PART
corporation,                                   )
                                               )
                      Respondent.              )

SIDDOWAY, J. — In this, the third appeal of Donna and Jeff Zink's 2003 Public Records Act (PRA)[1] lawsuit against the city of Mesa, we address whether a trial court may consider the small size of a jurisdiction and the disproportionate burden on its taxpayers of a penalty whose amount would be appropriate if imposed on a larger jurisdiction.  Rejecting both parties' appeals, we hold that the trial court did not err or abuse its discretion in arriving at a preliminary penalty based on culpability and then

_____

[1] Chapter 42.56 RCW.

reducing the penalty to an amount ($350 per taxpayer) deemed necessary and sufficient to deter future misconduct.

We also address the application of legislation enacted in 2011 that eliminated a $5 floor on per-day penalties under the PRA and hold that as remedial legislation, it is retroactive. We affirm.

FACTS AND PROCEDURAL BACKGROUND

In August 2002, the city of Mesa took the position that a building permit granted to Donna and Jeff Zink for home repairs in April 2000 had expired for suspension or abandonment. *Zink v. City of Mesa*, 137 Wn. App. 271, 273-74, 152 P.3d 1044 (2007) (*Zink* I). After the city's board of appeals affirmed the city's decision, the Zinks filed a petition under LUPA[2] in which they prevailed following city concessions. *Id.* at 274. In *Zink* I, this court rejected the parties' cross appeals of the trial court's award of attorney fees.

In the same month that the city deemed their building permit to have expired, the Zinks began filing public record requests for documents held by the city. *Zink v. City of Mesa*, 140 Wn. App. 328, 333, 166 P.3d 738 (2007) (*Zink* II). From August 2002 to January 31, 2005, the requests, by the city's count, totaled 172. *Id.* Many, but not all, related to the city's decision to terminate the Zinks' building permit; others related to the

---

[2] The Land Use Petition Act, chapter 36.70C RCW.

Zinks' "self-described 'watchdog type' role in the City." *Id.* In April 2003, the Zinks

filed an action against the city alleging violations of the Public Disclosure Act, former

chapter 42.17 RCW.[3] *Id.* at 334.

At the first show cause hearing conducted in the matter, the trial court made no

findings on specific alleged violations, finding instead in general terms that the city had

"'more than substantially complied'" with the requests, that it was a "'practical

impossibility'" for the city to strictly comply given the number of requests and its limited

manpower, and that the Zinks' requests "'amounted to unlawful harassment.'" *Id.* at

335.

In *Zink* II, this court reversed the trial court and remanded with directions to enter

findings on whether the city strictly complied with the PRA in the instances identified by

the Zinks. Where violations had occurred, this court directed the trial court to award

penalties, costs, and attorney fees. *Id.* at 349.

After a hearing following remand, the trial court ordered the city to pay the Zinks

a total judgment of about $245,940, consisting of $167,930 in penalties, $5,700 in costs,

---

[3] In 2005, the portion of the Public Disclosure Act that is now the Public Records Act (PRA) was renamed and recodified as chapter 42.56 RCW. LAWS OF 2005, ch. 274 (effective July 1, 2006). The provisions were not otherwise changed. We use the current term "PRA" to refer to the public record provisions as codified before and after July 1, 2006.

and $72,309 in attorney fees. *Zink v. City of Mesa*, 162 Wn. App. 688, 701, 256 P.3d 384 (2011) (*Zink* III).

The Zinks again appealed to this court and the city again cross appealed. *Id.* Before the matter was set for argument, however, the Washington Supreme Court accepted review of Division One's decision in *Yousoufian v. Office of Ron Sims*, 137 Wn. App. 69, 151 P.3d 243 (2007) (*Yousoufian* II[4]) on which the trial court in the Zinks' case had relied in arriving at its per-day penalty awards. The city's request for a stay of the appeal pending the issuance of the Supreme Court's decision was granted by this court and was lifted in May 2010 after the Supreme Court issued *Yousoufian v. Office of Ron Sims*, 168 Wn.2d 444, 229 P.3d 735 (2010) (*Yousoufian* III). *Zink* III, 162 Wn. App. at 702.

In *Yousoufian* III, the Supreme Court recognized that trial courts would be well served by guidance on how the high court believed they should exercise their broad discretion to impose PRA penalties, given the dearth of reported cases. *Yousoufian* III,

---

[4] We refer to three of the six reported and unreported decisions in Armen Yousoufian's lawsuit against the office of Ron Sims. We refer to them as *Yousoufian* I, *Yousoufian v. Office of King County Exec.*, 152 Wn.2d 421, 98 P.3d 463 (the 2004 Supreme Court decision), *Yousoufian* II (the 2007 Court of Appeals decision) and *Yousoufian* III, *Yousoufian v. Office of Ron Sims*, 168 Wn.2d 444, 229 P.3d 735 (the 2010 Supreme Court decision).

No. 34599-8-III
*Zink v. City of Mesa*

168 Wn.2d at 463. It announced 16 nonexclusive mitigating and aggravating factors trial

courts should use as a guide in determining penalty amounts. *Id.* at 467-68.[5]

In the decision in this matter issued after the stay was lifted, dozens of challenges

to the trial court's calculations of the penalty *days* for the city's 33 violations were

resolved. *Zink* III, at 706-22, 730. Recognizing that the trial court had used a now-

rejected method for calculating the *amount* of the per-day penalties, however, this court

---

[5] The mitigating factors, which may serve to decrease a penalty, include:

> (1) a lack of clarity in the PRA request; (2) the agency's prompt response or legitimate follow-up inquiry for clarification; (3) the agency's good faith, honest, timely, and strict compliance with all PRA procedural requirements and exceptions; (4) proper training and supervision of the agency's personnel; (5) the reasonableness of any explanation for noncompliance by the agency; (6) the helpfulness of the agency to the requestor; and (7) the existence of agency systems to track and retrieve public records.

*Yousoufian* III, 168 Wn.2d at 467 (footnotes omitted). The aggravating factors, which may support increasing a penalty, include:

> (1) a delayed response by the agency, especially in circumstances making time of the essence; (2) lack of strict compliance by the agency with all the PRA procedural requirements and exceptions; (3) lack of proper training and supervision of the agency's personnel; (4) unreasonableness of any explanation for noncompliance by the agency; (5) negligent, reckless, wanton, bad faith, or intentional noncompliance with the PRA by the agency; (6) agency dishonesty; (7) the public importance of the issue to which the request is related, where the importance was foreseeable to the agency; (8) any actual personal economic loss to the requestor resulting from the agency's misconduct, where the loss was foreseeable to the agency; and (9) a penalty amount necessary to deter future misconduct by the agency considering the size of the agency and the facts of the case.

*Id*. at 467-68 (footnotes omitted).

vacated the penalties and remanded with directions to determine penalty amounts in accordance with the guidance provided by *Yousoufian* III. *Id.* at 705-06, 730.

Four-and-a-half years later, in December 2015, the city filed a motion for partial summary judgment. Among the relief it requested was a ruling that Substitute House Bill 1899 (SHB 1899), enacted in May 2011, applied retroactively to the penalty phase of the PRA proceeding. The 2011 legislation removed what had formerly been a $5 floor on per-day penalties. LAWS OF 2011, ch. 273, § 1 (effective July 22, 2011) amending RCW 42.56.550(4). A new trial court to whom the matter was assigned following remand ruled that SHB 1899, being remedial, applied retroactively.

The Zinks then filed a motion for assessment of penalties, attorney fees, and costs against the city, supported by extensive documentation. The parties agreed that since this court had resolved the number of penalty days in *Zink* III, all that remained was for the trial court to set penalty amounts.

The trial court held a three-day hearing in which it used individual worksheets to assess the *Yousoufian* factors for each violation, indicating, with respect to each factor, whether it was "strongly present," "moderately present," "not present," or " NA [not applicable]." Clerk's Papers (CP) at 2437-69 (some capitalization omitted).

A few weeks thereafter, the trial court convened a hearing to deliver an oral ruling. It provided the parties with copies of its 33 penalty worksheets. The preliminary penalties identified as appropriate ranged from $1 per day on the low end to $100 per day

6

on the high end. Some of the penalties were adjusted for four periods falling between the start dates established in *Zink* III and November 7, 2008, the date that findings, conclusions and an order for the second show cause hearing were entered.[6]

After identifying a calculation error, it was determined that the total penalty based on the 33 worksheet amounts and the four calculation periods was $352,955. The trial court told the parties it was "a little unsettled" by the $352,955 figure and would reserve a final ruling until the presentment of proposed findings and conclusions. Report of Proceedings (RP) (May 10, 2016) at 55. It rejected a party's reference to the court as having "aimed" for a different range, explaining, "I have not aimed at any number, any gross number. I anticipated a methodology where I would just apply the factors as objectively as I could and let the chips fall where they may." *Id.* at 54-55. The court added, "I also told you that my intentions were to then look at that number to see if I was uncomfortable with it." *Id.* at 55. The court told the parties it was going to give thought to the legal question of whether it had authority to "go back and do a wholesale

---

[6] The "primary period" ran from the start date through June 24, 2003, when the city's clerk/treasurer received legal advice from a municipal research agency on PRA exemptions for names and residential addresses of individuals. The "secondary period" began thereafter and ran to May 13, 2005, when the original trial court announced its initial ruling following the first show cause hearing. The "tertiary period" began thereafter and ran to August 23, 2007, the date on which this court reversed the trial court and remanded. The "quaternary period" began thereafter and ran to November 7, 2008, the date the original trial court entered its final order following remand.

7

adjustment to the total. And I don't know the answer to that question." *Id.* at 56-57. It

invited the parties to brief the issue in connection with their presentation of proposed

findings of fact and conclusions of law. *Id.*

The city's submissions thereafter included a declaration from its clerk/treasurer

identifying the amounts and restrictions on its 2015 and 2016 tax revenues, and its

counsel's illustration of the impact of the trial court's preliminary penalty figure, given

the city's small size and limited resources. Comparing Mesa with another city in Benton

County, the city explained:

> If Pasco had treated Ms. Zink the way Mesa treated Ms. Zink, the Court's
> preliminary penalty award of $352,955 might be warranted. But a penalty
> of that size would "only" amount to $5 per resident for Pasco, whereas that
> same penalty will cost each resident of Mesa $718. If Pasco was penalized
> at $718-per-resident, the total penalty would top $49 million. The City of
> Mesa suggests that no one would support giving away $49 million of tax
> payer dollars based on the statutory violations of a handful of government
> employees.

CP at 2899-2900 (footnotes omitted).

At the hearing on entry of the final order, the trial court told the parties it had

concluded that a $175,000.00 penalty was "sufficient to deter future conduct . . . . It is

such an amount that would avoid this windfall to the plaintiffs. It will certainly sting the

city but will not, in my judgment, cripple them." RP (June 29, 2016) at 59. Its written

findings and conclusions state:

> After reaching the preliminary total of $352,954, the Court has considered
> whether that amount was appropriate, taking into account Mesa's small

8

size, limited resources, and the deterrent purposes of PRA penalties. Based
on this consideration, the Court finds that the preliminary penalty award
was greater than needed to serve the purposes of PRA penalties and should
be reduced to $175,000.

CP at 2430. The total judgment awarded was $200,746.47: $175,000.00 for PRA

penalties, and $25,746.47 in attorney fees and costs incurred in the prior appeal.

The Zinks appeal and the city cross appeals.

ANALYSIS

The Zinks' extensive briefing describes each of the city's 33 public record

violations, but their assignments of error are more limited, requiring us to address only

two legal issues: (1) Does the 2011 legislative amendment eliminating the $5 floor on the

per-day penalty amount apply retroactively, and (2) does a trial court have discretion

under the PRA to globally reduce penalties based on an agency's size, limited resources,

and the deterrent purposes of PRA penalties. Br. of Appellant at 2.[7]

---

[7] The Zinks make a third assignment of error to the court's alleged construction of
the PRA to "allow[ ] a court to set a lower per-day penalty where an agency has
continued to violate the act for a high number of days." Br. of Appellant at 2. They cite
in support only RP (June 29, 2016) at 24-25, which does not support its characterization
of the court's reasoning.

In the trial court, the city did advance such a reading of *Wade's Eastside Gun
Shop, Inc. v. Department of Labor & Industry*, 185 Wn.2d 270, 291, 372 P.3d 97 (2016),
which we question. *See* CP at 2831-32 (arguing that one could infer the court's approval
of reducing a per-day penalty to $0.01 in order to compensate for a long period of
withholding). *Cf. Koenig v. City of Des Moines*, 158 Wn.2d 173, 188-89, 142 P.3d 162
(2006) (citing *Yousoufian* I, 152 Wn.2d at 437) (holding that the trial court lacks
discretion to reduce the number of *penalty days* to adjust for a long period of
withholding). But the trial court in this case did not rely on this reasoning for its

The city raises two issues in its cross appeal: (1) whether the trial court abused its discretion by imposing a penalty that exceeds 100 percent of the city's 2015 annual general fund unrestricted tax revenue and amounts to an averaged cost of approximately $350 per resident, and (2) whether insufficient evidence supports the trial court's finding that a municipal research agency's memo should have put the city on notice of the impropriety of some of its document redactions. Br. of Resp't at 4.

In the published portion of this decision, we address the second issue raised by the Zinks and the first issue raised by the city: a trial court's discretion (and perhaps its duty) to adjust what would be an appropriate penalty amount in a typical case, where that penalty amount is more than necessary to deter a small jurisdiction or agency, to the point of being financially crippling. We also address the Zinks' challenge to the trial court's ruling that the 2011 amendment was remedial. We address the remaining issues in the unpublished portion of the decision.

I.  ISSUES ARISING FROM THE TRIAL COURT'S ADJUSTMENT OF ITS TOTAL PENALTY
    BASED ON THE SIZE OF THE AGENCY AND THE FACTS OF THE CASE

### APPEAL

A.  A trial court does not abuse its discretion by treating the ninth "deterrence" *Yousoufian* aggravating factor as the most important aggravating factor in an appropriate case

---

reduction of the penalty nor does the city seriously defend the reduction of the penalty on this basis on appeal. Since we do not find it to have been a basis for the penalty assessment, we do not address it further.

The PRA mandates an award of "all costs, including reasonable attorney fees" to a person who prevails against an agency in an action in the courts seeking the right to inspect or copy a public record or to receive a response to a public record request within a reasonable amount of time. RCW 42.56.550(4). In addition,

> it shall be *within the discretion of the court* to award such person an amount not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record.

*Id.* (emphasis added). We review a trial court's award of penalties under the PRA for an abuse of discretion. *Bricker v. Dep't of Labor & Indus.*, 164 Wn. App. 16, 21, 262 P.3d 121 (2011). An abuse of discretion occurs when a decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *Graves v. Emp't Sec. Dep't*, 144 Wn. App. 302, 309, 182 P.3d 1004 (2008).

Our Supreme Court has stated that the PRA penalty "is intended to 'discourage improper denial of access to public records and [encourage] adherence to the goals and procedures dictated by the statute.'" *Yousoufian v. Office of King County Exec.*, 152 Wn.2d 421, 429-30, 98 P.3d 463 (2004) (*Yousoufian* I) (alteration in original) (quoting *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 140, 580 P.2d 246 (1978)), *quoted in Yousoufian* III, 168 Wn.2d at 461. The PRA's goals and procedures, as we often repeat, serve as a "strongly worded mandate for broad disclosure of public records." *Hoppe*, 90 Wn.2d at 127.

In *Zink* III, this case was remanded so that the trial court could arrive at a penalty with the guidance provided by *Yousoufian* III. By employing its worksheet, the trial court scrupulously considered each of the aggravating and mitigating factors identified in that decision. But the Supreme Court emphasized in *Yousoufian* III that the trial court was not required to weigh each factor equally:

> We emphasize that the factors may overlap, are offered only as guidance, may not apply equally or at all in every case, and are not an exclusive list of appropriate considerations. Additionally, no one factor should control. These factors should not infringe upon the considerable discretion of trial courts to determine PRA penalties.

*Yousoufian* III, 168 Wn.2d at 468.

The issue raised by the Zinks' appeal is whether making a global adjustment based on a jurisdiction's "small size, limited resources, and the deterrent purposes of PRA penalties" is improper given the purposes of the PRA, and whether even if it may be proper in some cases, the trial court abused its discretion by relying on the presence of those factors to reduce its preliminary penalty figure by half. CP at 2430. The related issue raised by the city's cross appeal is whether the trial court abused its discretion by not reducing its preliminary penalty figure even further.

The issue pits the interest of the Zinks in acquiring a larger, culpability-focused penalty that the trial court would have imposed on a larger, more typical agency against the financial burden to the city and its taxpayers.

The trial court found 3 of the city's violations to constitute bad faith, found 2 to have been reckless, and found 18 to have been negligent. With respect to only 10 of the violations did it find that the fifth fault aggravator ("negligent, reckless, wanton, bad faith or intentional noncompliance with the PRA" (quoting *Yousoufian* III, 168 Wn.2d at 468)) was not present to any degree.

As argued by the Zinks, Washington decisions provided for much of the history of the PRA that "'[w]hen determining the amount of the penalty to be imposed "the existence or absence of [an] agency's bad faith is the principal factor which the trial court must consider."'" *Yousoufian* III, 168 Wn.2d at 460 (quoting *Amren v. City of Kalama*, 131 Wn.2d 25, 37-38, 929 P.2d 389 (1997) (alteration in original) (quoting *Yacobellis v. City of Bellingham*, 64 Wn. App. 295, 303, 825 P.2d 324 (1992), *abrogated on other grounds by Amren*, 131 Wn.2d 25)). And in light of the $5 floor for a penalty provided by former RCW 42.56.550(4) (2005), Washington cases formerly held that a penalty was mandated whenever a violation was found. As our Supreme Court explained, "If the trial court refuses to assess any penalty, then it is setting the penalty at less than $5, which is contrary to the unambiguous language used in [former] RCW 42.17.340(4) [(1992)]." *Yousoufian* I, 152 Wn.2d at 433 (citing *King County v. Sheehan*, 114 Wn. App. 325, 355, 57 P.3d 307 (2002)). In some cases, *Yousoufian* I being an example, fault was a basis for remanding if a trial court was deemed to have abused its discretion by not fixing the per

13

day penalty at what the appellate court deemed to be a reasonable amount within the penalty range. *See id*. at 439.

But in none of those cases was it contended that increasing the per-day penalty amount by focusing solely on fault would push the total penalty to an amount going well beyond what was needed to deter future violations, given the size and financial resources of the jurisdiction or agency.

Since *Yousoufian* I, *Amren*, and *Yacobellis*, legislative amendments have increased a trial court's discretion in setting penalties for PRA violations and decisions of our Supreme Court have explicitly recognized that an agency's smallness and limited resources can matter. *Yousoufian* III, for example, explicitly recognized that the small size of an agency, in the context of deterrence, justified a smaller per-day penalty. The court expressed concern in that case that in setting penalties below, the trial court ignored deterrence. 168 Wn.2d at 462-63. Mr. Yousoufian had sued King County, yet in setting the penalty on remand at $15 per day, the trial court relied on *American Civil Liberties Union v. Blaine School District No. 503*, 95 Wn. App. 106, 975 P.2d 536 (1999), which *Yousoufian* III characterizes as having involved "a small school district." 168 Wn.2d at 463. The court observed, "[H]ere the county is the most populous county in the state. The penalty needed to deter a small school district and that necessary to deter a large county may not be the same." *Id.* To accomplish the PRA's purpose, the court said, "the penalty must be an adequate incentive to induce future compliance." *Id.*

14

The court in *Yousoufian* III also held that only in limited circumstances is compensating a plaintiff a relevant consideration in setting a penalty. Given the importance of deterrence, the court held that compensating a plaintiff should be a factor in increasing a penalty only if an economic loss to the record requester was a foreseeable result of the agency's misconduct. *Id.* at 461-62. Earlier cases had recognized that because the PRA separately provides for the recovery of attorney fees and costs incurred by the requester in pursuing a PRA claim, attorney fees are not relevant as an economic loss. *Yacobellis*, 64 Wn. App. at 304.

In completing its worksheets in this case, the trial court identified only three violations in connection with which the Zinks incurred foreseeable personal economic loss. The record contains no evidence of the amount of the loss, nor did the trial court make a finding of its amount. The court's notes suggest that the economic loss arose from the Zinks' delayed receipt of three records that would have been important to their appeal of the termination of their building permit. Their LUPA appeal was ultimately successful, however, and the trial court in that matter awarded the Zinks their reasonable attorney fees and costs. *Zink* I, 137 Wn. App. at 277-78. The Zinks offer no evidence or argument that the $175,000 adjusted penalty amount failed to take into consideration any foreseeable economic loss to them.

After *Yousoufian* III provided guidance and affirmed the trial court's "considerable discretion" in determining PRA penalties, 168 Wn.2d at 466, the

15

legislature went further by enacting SHB 1899 and eliminating the $5 penalty floor,

thereby also eliminating the requirement that a trial court impose a penalty whenever a

violation is found.[8]  A trial court's refusal to impose a penalty remains reviewable for

abuse of discretion.

The city contends it was appropriate for the trial court to fix a penalty that created

no more hardship for it than has been created for agencies committing similar violations.

It asserts that the largest penalty recorded in a reported decision occurred in *Wade's*

*Eastside Gun Shop, Inc. v. Department of Labor & Industry*, 185 Wn.2d 270, 372 P.3d 97

(2016), in which the total penalty imposed was $502,827.40, an amount representing 2.1

percent of the Department of Labor and Industries' general fund budget in 2015.  Br. of

Resp't at 2 n.6.  In a table in its opening brief, the city identifies 11 other reported cases

in which an agency's violations, although egregious in some cases, never exceeded one

---

[8] In committee hearings on SHB 1899, a deputy attorney general explained that eliminating the $5 minimum would give trial courts the discretion not to impose any penalty.  *See* Hr'g on SHB 1899 Before the S. Government Operations, Tribal Relations & Elections Comm., 62d Leg., Reg. Sess., at 75 min., 0 sec. to 75 min., 25 sec. and 76 min., 40 sec. to 76 min., 50 sec. (Wash. Mar. 17, 2011), *video recording by* TVW, Washington State's Public Affairs Network, https://www.tvw .org/watch/?eventID =2011031165.
The legislative change passed overwhelmingly.  SHB 1899 passed the House by a vote of 96-2 and passed the Senate by a vote of 47-0, with two senators excused.  *See HB 1899: Bill History*, WASH. ST. LEGISLATURE, http://apps2.leg.wa.gov/billsummary ?BillNumber=1899&Year=2011&BillNumber=1899&Year=2011[https://perma.cc /RFE3-7F2C].

percent of the agency's annual general fund budget.[9]  A search of Washington cases

reveals that most penalty awards against jurisdictions in PRA cases rarely exceed more

than a few dollars per resident on a per capita basis.  *E.g.*, *Yousoufian* III, 168 Wn.2d at

470 (awarding $371,340.00, which amounts to approximately 19 cents per resident);

*Cedar Grove Composting, Inc. v. City of Marysville*, 188 Wn. App. 695, 707, 354 P.3d

249 (2015) (awarding $143,740.00, which equals approximately $2.39 per resident).[10]

---

[9]
| Case | Penalty | General Fund Budget |
|------|---------|---------------------|
| *Yousoufian v. Office of Ron Sims* | $371,340 | $3.1 billion |
| *Cedar Grove v. City of Marysville* | $143,740 | $42.2 million |
| *Lindell v. City of Mercer Island* | $90,560 | $22.775 million |
| *Bricker v. Dep't of L&I* | $29,445 | $22.224 million |
| *Adams v. DOC* | $24,535 | $1.6 billion |
| *Wade's v. Dep't of L&I* | $502,827 | $22.224 million |
| *West v. Thurston County* | $16,020 | $81 million |
| *Sanders v. State* | $18,112 | $4 million |
| *Kitsap Cy. Pros. Att'ys Guild v. Kitsap Cy.* | $845 | $80 Million |
| *ACLU v. Blaine School District* | $5,770 | *$5 million (est.)* |
| *Lindberg v. Kitsap County* | $500(est.) | $39 million (est.) |

Br. of Resp't at 43 (footnotes omitted).

[10] We take judicial notice of 2010 United States Census published population
figures.  *See QuickFacts King County, Washington*, U.S. CENSUS BUREAU,
https://www.census .gov/quickfacts/fact/table/kingcountywashington/PST045216;
*QuickFacts Marysville City, Washington*, U.S. CENSUS BUREAU, https://www.census.gov
/quickfacts/fact/table /marysvillecitywashington/PST045216.

Most of the aggravating or mitigating factors identified in *Yousoufian* III bear on some operational shortcoming, inattention, or more blameworthy conduct without respect to the penalty amount sufficient to deter future violations. The Supreme Court's holding that the *Yousoufian* factors "may not apply equally or at all in every case," 168 Wn.2d at 468, authorizes a trial court in an appropriate case to attribute more weight to the ninth aggravating factor, which *does* take deterrence and the size of the agency into consideration, than to other factors that do not. This is a case in which attributing more weight to the ninth deterrence factor was reasonable.

"The trial court is in the best position to make an individual, fact-driven inquiry into what PRA penalties are necessary to achieve the penalty provision's goal of deterring unlawful nondisclosure." *Wade's Eastside Gun Shop*, 185 Wn.2d at 280. The trial court did not err or abuse its discretion in concluding that the penalty amount needed to deter the city is not the same as that presented in cases involving Washington jurisdictions or agencies with much larger budgets and resources.

B.     The trial court's two-step method for adjusting a preliminary penalty was not erroneous or an abuse of discretion

We also find no fault with the process by which the trial court analyzed the 16 *Yousoufian* factors by evaluating the evidence first as if the action involved a more typical agency, and only then taking a second look, to arrive at an amount that would serve as a deterrent and yet not cripple the city. As the judge explained, he was trained as

an engineer to approach a problem objectively but then "you should always then stand back and look at your results to make sure that it really makes sense." RP (May 10, 2016) at 41.

Evidence of the violations and the relevant *Yousoufian* factors was presented serially, over three days. The vast majority of the *Yousoufian* factors could be applied on the case-by-case evidence and the trial court reasonably wished to make notes of its assessment as the evidence of each violation was presented. With the benefit of hindsight, it was probably not possible to assess the ninth deterrence aggravator other than on a cumulative basis. To butcher an aphorism, as long as one is eying one tree at a time, one cannot see the forest.

Neither the PRA nor our Supreme Court has dictated any particular method for applying the mitigating and aggravating factors. The manner in which the trial court proceeded was transparent and fair. No error or abuse of discretion is shown.

CROSS APPEAL

C.     It is not within the authority of this court to impose a cap on PRA penalties, and the city has not shown that the trial court abused its discretion by not reducing the penalty further

The city asks us to establish a cap on PRA penalty awards of one percent of an agency's annual general fund budget. Should we decline, it asks us to find that the trial court abused its discretion by refusing to reduce the penalty further.

19

The due process clause of the Fourteenth Amendment to the United States

Constitution places a limitation on the power of states to prescribe penalties for violations

of their laws. *St. Louis, Iron Mountain & S. Ry. Co. v. Williams*, 251 U.S. 63, 66-67, 40

S. Ct. 71, 64 L. Ed. 139 (1919). The standard articulated in the almost century-old

*Williams* decision continues to govern review of whether an award of statutory damages

violates due process. *E.g.*, *Sony BMG Music Entm't v. Tenenbaum*, 719 F.3d 67, 70-71

(1st Cir. 2013); *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 453-54, 113 S. Ct.

2711, 125 L. Ed. 2d 366 (1993). *Williams* states that while a limitation imposed by the

Fourteenth Amendment has been fully recognized, it has always been "with the express

or tacit qualification that the states still possess a wide latitude of discretion in the matter,

and that their enactments transcend the limitation only where the penalty prescribed is so

severe and oppressive as to be wholly disproportionate to the offense and obviously

unreasonable." 251 U.S. at 66-67.

In *Perez-Farias v. Global Horizons, Inc.*, 175 Wn.2d 518, 530, 286 P.3d 46

(2012), our Supreme Court addressed questions certified by the Ninth Circuit Court of

Appeals having to do with a trial court's discretion when imposing penalties under the

farm labor contractors act, chapter 19.30 RCW. The Supreme Court declined to address

the standard for Fourteenth Amendment review of such penalties, deferring to the Ninth

Circuit, which thereafter applied the *Williams* standard. *Perez-Farias v. Glob. Horizons,

Inc.*, 499 F. App'x 735, 737 (9th Cir. 2012). In otherwise answering the questions

20

certified, however, our Supreme Court rejected an argument that it should impose a cap

on the statutorily-authorized penalty, explaining:

> The legislature has declined to create such a cap . . . .  We find nothing in
> either Washington case law or the statutes to support capping an award of
> damages under these circumstances.  A contrary holding would be
> inconsistent with the overall purposes and aim of the statute.  We hold no
> state public policy or due process principles require reduction in the total
> damages mandated by statute.

*Perez-Farias*, 175 Wn.2d at 533 (footnote omitted).  While *Perez-Farias* involved a

mandatory penalty while this case involves a discretionary one, the absence of a

decisional or statutory basis for judicially imposing a cap is the same.  We violate the

separation of powers doctrine when we assume "tasks that are more properly

accomplished by other branches." *Hale v. Wellpinit Sch. Dist. No. 49*, 165 Wn.2d 494,

506, 198 P.3d 1021 (2009) (quoting *Carrick v. Locke*, 125 Wn.2d 129, 136, 882 P.2d 173

(1994) (internal quotation marks and alterations omitted).  If a cap is to be imposed, it

will have to be imposed by the legislature.

Turning to whether the trial court abused its discretion by not imposing a lower

penalty on the city, we note that in the handful of instances exhibiting the most

culpability, the trial court observed that "[t]he mayor injected herself in decisions

regarding the release of records.  Records were hidden.  Records were destroyed.

Records were lost." RP (May 10, 2016) at 10.  As to some other violations, the trial court

found that the city "failed miserabl[y] to train its staff" and failed to abandon invalid

21

claims of exemptions. *Id.* It found that the city was, in some cases, disparately

uncooperative with the Zinks. Ms. Zink testified in the first show cause hearing that she

believed her and her husband's "watchdog" activities were the reason for the city's

resistance to filling her public record requests. *Zink* II, 140 Wn. App. at 334.

The city does not dispute that its level of culpability supports the preliminary per-

day penalty figures imposed by the court; it argues only for more parity in financial

impact as compared to larger agencies. Deterrence based on an agency's size is only one

of 16 *Yousoufian* factors, however. Had the trial court considered only deterrence and

parity, it would have violated the Supreme Court's directive in *Yousoufian* III that "no

one factor should control." 168 Wn.2d at 468.

While we might have imposed a different penalty, we cannot say that the trial

court abused its discretion by refusing to reduce the penalty further.

II.    THE PRA'S 2011 AMENDMENT BY SHB 1899 IS REMEDIAL AND OPERATES
       RETROACTIVELY

The Zinks argue that the trial court erred in construing SHB 1899 as remedial and

operating retroactively.[11] The trial court imposed a penalty for each violation for each

day of the over 20,000-day penalty period, but it did rely on the retroactive application of

---

[11] The Zinks also make a handful of arguments that SHB 1899 cannot operate retroactively for other reasons. We reject all of the arguments. Given the criteria for publication, we will reverse the order in which we would ordinarily address those arguments and relegate them to the unpublished portion of the decision. *See* RAP 12.3(d).

the 2011 legislation to impose a preliminary penalty of $1 per day for some violations and some periods. Whether a statute applies retroactively is a question of law that this court reviews de novo. *State v. Schenck*, 169 Wn. App. 633, 642, 281 P.3d 321 (2012).

Generally, statutory amendments are presumed to operate prospectively and not retroactively. *Hale*, 165 Wn.2d at 507-08. The presumption against retroactivity is overcome when the legislature explicitly provides for retroactive application, when an amendment is curative in the sense of "clarif[ying] or mak[ing] a technical correction to an ambiguous statute," or when the enactment is remedial. *In re Pers. Restraint of Flint*, 174 Wn.2d 539, 546, 277 P.3d 657 (2012). Where "a statute is remedial and its remedial purpose is furthered by retroactive application, the presumption favoring prospective application is reversed." *Haddenham v. State*, 87 Wn.2d 145, 148, 550 P.2d 9 (1976). "'A statute is remedial when it relates to practice, procedure, or remedies and does not affect a substantive or vested right.'" *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 586, 146 P.3d 423 (2006) (quoting *Miebach v. Colasurdo*, 102 Wn.2d 170, 181, 685 P.2d 1074 (1984).

RCW 42.56.550, both before and after its amendment by SHB 1899, governs judicial review of agency actions under the PRA. Its subsection (4), both before and after its amendment by SHB 1899, identifies the remedies available to a person who prevails against an agency in an action brought under the statute. By removing the floor to the

per-day penalty amount that a trial court can impose, SHB 1899 related to a remedy. The trial court correctly concluded that the 2011 amendment was remedial and retroactive.

The Zinks argue that even if the 2011 amendment was remedial, it affected a vested right. "'[A] right cannot be considered a vested right, unless it is something more than such a mere expectation as may be based upon an anticipated continuance of the present general laws: it must have become a title, legal or equitable, to the present or future enjoyment of property.'" *Miebach*, 102 Wn.2d at 181 (quoting *Gillis v. King County*, 42 Wn.2d 373, 377, 255 P.2d 546 (1953)). Accordingly, a party with a cause of action or remedy created by statute does not have a vested right until a final judgment is entered. *Haddenham*, 87 Wn.2d at 149.

The 2011 amendment removing the PRA's penalty floor is remedial and the trial court properly applied it retroactively.

Affirmed.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with RCW 2.06.040, the rules governing unpublished opinions.

## APPEAL

III.      RETROACTIVE APPLICATION OF THE PRA'S 2011 AMENDMENT IS NOT PREVENTED BY THE LAW OF THE CASE DOCTRINE OR ANY CONSTITUTIONAL PROVISION

The Zinks argue that for five additional reasons, the 2011 amendment to the PRA cannot apply to their claim. They argue first that under the "law of the case" doctrine, *Zink* III determined conclusively that the law in effect at the time their action was filed was controlling.

In its "most common form," the law of the case doctrine provides that "once there is an appellate holding enunciating a principle of law, that holding will be followed in subsequent stages of the same litigation." *Roberson v. Perez*, 156 Wn.2d 33, 41, 123 P.3d 844 (2005). The doctrine "applies only to questions decided," so matters not discussed or otherwise involved in an appellate decision are not barred by the doctrine from consideration in a subsequent appeal of the same litigation. Philip A. Trautman, *Claim and Issue Preclusion in Civil Litigation in Washington*, 60 WASH. L. REV. 805, 811 (1985).

Nothing the Zinks point to in this court's opinion in *Zink* III established law of the case on the issue of the retroactive or prospective operation of SHB 1899. The fact that we noted the bill's passage in a footnote is not a ruling on its application. Our consistent citations to the former version of the PRA in *Zink* III is unsurprising and inconsequential; in addressing a claim under the PRA, we will rely on the statutes in effect at the time the action was commenced unless a party demonstrates a basis for retroactively applying a later statute. The city did so here, pointing to the remedial character of the 2011 amendment.

25

The issue of whether SHB 1899 should apply retroactively was not presented in *Zink* III, as demonstrated by the city's postdecision motion requesting that we "consider," not "reconsider" whether it applied retroactively. *E.g.*, CP at 200, 207. The fact that this court summarily denied the city's postdecision motion was not a rejection of the city's argument; as a matter of law, such an issue can and should be addressed by the trial court on remand. *See Franklin County Sheriff's Office v. Parmelee*, 175 Wn.2d 476, 481, 285 P.3d 67 (2012) (retroactivity of a legislative change to the PRA enacted while review was pending should not have been taken up by the appellate court; it was an issue for the trial court following remand).

The Zinks also argue that retroactively applying SHB 1899 violates rights protected by the ex post facto, equal protection, and due process clauses of the United States and Washington Constitutions.

The federal and state ex post facto clauses pertain exclusively to penal statutes. *Kansas v. Hendricks*, 521 U.S. 346, 370, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997); *Forster v. Pierce County*, 99 Wn. App. 168, 178, 991 P.2d 687 (2000). "If a law is not 'criminal' or 'punitive,' it can be applied to any conduct, either past or future, without violating the ex post facto clause." *Forster*, 99 Wn. App. at 178. RCW 42.56.550 is not a penal statute.

The Zinks' equal protection argument is based on their observation that other cases filed and decided before and after their action applied the provisions of the PRA as

26

it existed before its amendment in 2011. The equal protection clauses of the federal and state constitutions require that *the law* must ensure that "'persons similarly situated with respect to the legitimate purpose of the law must receive like treatment.'" *State v. Johnson*, 194 Wn. App. 304, 307, 374 P.3d 1206 (2016) (quoting *State v. Coria*, 120 Wn.2d 156, 169, 839 P.2d 890 (1992)). They are not a guarantee that parties will always raise and effectively argue the law, or that courts will always correctly apply it. The Zinks make no argument that, as amended in 2011, the PRA fails to ensure that persons similarly situated with respect to the legitimate purpose of the law will receive like treatment.[12]

Turning to the Zinks' allegation of a violation of due process, "'A retroactive law violates due process when it deprives an individual of a vested right.'" *State v. Varga*, 151 Wn.2d 179, 195, 86 P.3d 139 (2004) (quoting *State v. Shultz*, 138 Wn.2d 638, 646, 980 P.2d 1265 (1999)). As earlier explained, the Zinks did not have a vested right to any penalty range or amount.

Finally, the Zinks argue that the trial court's retroactive application of SHB 1899 violated the separation of powers doctrine. They rely on inapposite case law holding that

---

[12] As the city points out, there are several cases wherein Washington courts have applied SHB 1899 retroactively to cases pending prior to its effective date. *See West v. Thurston County*, 168 Wn. App. 162, 168, 187-88, 275 P.3d 1200 (2012) (action filed in 2007); *Forbes v. City of Gold Bar*, 171 Wn. App. 857, 859-60, 864, 288 P.3d 384 (2012) (action filed in 2010); *Bricker*, 164 Wn. App. at 19, 21 n.3 (action filed in 2008).

the legislature cannot retroactively change a statute in contravention of an existing

judicial construction of that statute. Br. of Appellant at 48 (citing, *e.g.*, *Am. Disc. Corp.*

*v. Shepherd*, 129 Wn. App. 345, 354, 120 P.3d 96 (2005), *aff'd*, 160 Wn.2d 93, 156 P.3d

858 (2007)). SHB 1899 did not seek to retroactively change judicially-construed law; it

changed remedies that could be ordered in the future. No separation of powers issue is

presented.

## CROSS APPEAL

IV. THE TRIAL COURT DID NOT ERR IN TREATING A JUNE 2003 MEMORANDUM
PROVIDING LEGAL GUIDANCE AS RAISING A "RED FLAG," JUSTIFYING INCREASED
PENALTIES FOR WITHHOLDING THEREAFTER

In five public records provided to the Zinks, relied on for violations 6, 8, 15, 16,

and 22, the city redacted name and mailing address information for certain individuals.

On June 23, 2003, its clerk/treasurer obtained guidance from the Municipal Research and

Services Center (MRSC) on the subject of "[d]isclosure of names and/or addresses of

people identified in city attorney invoices and in invoices from company with whom city

contracts for building department services." CP at 1062. The trial court treated the

memorandum as raising a red flag as to the propriety of the city's redactions in the five

public records. In its worksheet for violation 6, for example, the trial court wrote,

"Initially, the redactions were in good faith, but in June, 2003 the City was advised that

the names and addresses should not be generally redacted. Yet, the City did not go back

and revisit its decision." CP at 2442. The trial court increased its preliminary daily

28

penalty rate for these violations from $5 to $20 following the city's receipt of the MRSC

memorandum.

While the MRSC memorandum was responding to a question about names and

addresses of individuals identified in two specific situations, it provided a general

overview, including by identifying the situations when name and address information

could be withheld by a city.  It included the following advice:

> The general statute identifying most exemptions from public disclosure is
> RCW 42.17.310(1).  There is no exemption in RCW 42.17.310(1)
> applicable to a city that specifically exempts names of individuals, except
> for RCW 42.17.310(1)(e), which exempts "Information revealing the
> identity of persons who are witnesses to or victims of crime or who file
> complaints with investigative, law enforcement, or penology agencies,
> other than the public disclosure commission, if disclosure would endanger
> any person's life, physical safety, or property."  Also, there may be
> instances where, for example, names of witnesses may be deleted from
> investigative records, under RCW 42.17.310(l)(d), to protect their "right to
> privacy."  (RCW 42.17.255 states that a person's right to privacy is
> considered violated "only if disclosure of information about the person: (l)
> Would be highly offensive to a reasonable person, and (2) is not of
> legitimate concern to the public.")

> There is in RCW 42.17.260(9) a prohibition on disclosure of "lists of
> individuals requested for commercial purposes," but that provision does
> not apply to this request for disclosure.

> As to addresses, the only public disclosure exemption that applies to
> addresses of citizens is RCW 42.17.310(1)(v), which exempts "residential
> addresses and residential telephone numbers of the customers of a public
> utility contained in the records or lists held by the public utility of which
> they are customers."  That exemption does not apply here.  (Note that, for
> public employees, there is an exemption in RCW 42.17.310(1)(u) for
> "residential addresses or residential telephone numbers of employees or
> volunteers of a public agency which are held by any public agency in

personnel records, public employment related records, or volunteer rosters,
or are included in any mailing list of employees or volunteers of any public
agency.")

CP at 1062-63.

The city argues that the MRSC memorandum was answering a narrow question about redactions in attorney invoices and did not put it on notice that the redactions in the five records at issue were improper. The city does not dispute that the redactions in the five records *were* improper. The record it provides on review is insufficient for us to determine independently whether it ever had a reasonable basis for believing they were proper.

Even accepting the city's characterization of its conduct in its brief on appeal, however, we can affirm the trial court. According to the city's brief, violations 6, 15 and 16 were based on its misunderstanding that an exemption for utility customers was not limited to utility records, but was broad enough to include personally identifying information in nonutility records about an individual who happened to be a utility customer.[13] Its brief describes violation 8 as based on its belief that it could redact post office addresses of two of its council members based on the PRA exemption for the

---

[13] The exemption, presently codified at RCW 42.56.330(2), generally exempts "[t]he addresses, telephone numbers, electronic contact information, and customer-specific utility usage and billing information in increments less than a billing cycle of the customers of a public utility contained in the records or lists held by the public utility of which they are customers."

residential addresses of agency employees.[14]  Violation 22 involved the redaction of the

identification of a resident who filed a complaint with the city that the city argues on

appeal might have been based on the misunderstanding of the utility record exemption or

a misunderstanding of an investigative record exemption.  Since the MSRC memorandum

did not deal directly with any of the five records at issue, and the memorandum affirmed

the existence of exemptions for residential address information contained in utility,

employment, and investigative records, the city argues it was not placed on notice that the

redactions in the five records were improper.

Because the trial court announced in its oral ruling in May 2016 that it would

increase penalties for the redactions for periods after the city received the MRSC

memorandum, the city had the opportunity to make all of these arguments to the trial

court.  At the time of presentment and entry of its findings and conclusions, the trial court

stood by its oral ruling:

> [T]wo things are clear to me.  That, one, if the staff—the memo referred
> only to residential addresses, and P.O. boxes would not be included in that.
> Number two, that memo pointed out sufficient number of very specific and
> erroneous assertions of the exemption and redactions that it should have
> caused the city to reexamine this whole area of the redaction of addresses.
> And had it done so, it would have found all of its errors.  And ultimately we
> know that the redactions of all of these addresses were in error.  And so
> it's—I'm going [to] stand by my original ruling, because it was part of a
> pattern of stubbornness on the part of the city, even faced with that memo

---

[14] The exemption, presently codified at RCW 42.56.250(3), includes the
"[r]esidential addresses" of agency employees that are held by an agency in personnel
records, public employment related records or mailing lists of employees.

to not go back and reexamine the whole thing. So it was a more global view from my point of view rather than on each individual type of exemption.

RP (June 29, 2016) at 33-34.

The city's argument that an increase from a $5 per-day penalty to a $20 per-day penalty was an abuse of discretion under these circumstances is not well taken. If the MRSC memorandum had *directly* addressed the impropriety of the city's redactions in the five documents, the appropriate increase to the preliminary penalty would presumably have been to $100 per day. Given that the memorandum raised a red flag that the city might be too aggressively redacting information that is subject to only a few, narrow exemptions, the increase of the preliminary penalty to $20 per day was well within the trial court's discretion.

The Zinks request costs under RAP 14.1. Because costs are recoverable only by a substantially prevailing party and neither party has substantially prevailed in this appeal, the request is denied.

Affirmed.

Siddoway, J.

WE CONCUR:

Lawrence-Berrey, C.J.

Korsmo, J.

32